**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                                    )
AMAL GAZA, *et al.*                                        )
                                                                    )
                              Plaintiffs,                      )
            v.                                                     )          No. 1:24-cv-3503-ACR
                                                                    )
MARCO RUBIO, in his official capacity as       )
U.S. Secretary of State,                                   )
                                                                    )
                              Defendant.                     )
_____)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    I.    THE LEAHY LAW AND ISRAEL LEAHY VETTING FORUM ................................ 3

    II.    Procedural History .......................................................................................... 6

LEGAL STANDARDS ....................................................................................................... 9

ARGUMENT ...................................................................................................................... 10

    I.    This Court Lacks Jurisdiction Over Plaintiffs' Challenge to THE LEAHY LAW

        Because Plaintiffs Lack Standing ................................................................... 10

    A.    Plaintiffs Lack an Injury-in-Fact.................................................................... 11

    B.    Plaintiffs Fail to Plausibly Plead that their Alleged Future Injury is Traceable to

        Defendant's Conduct. ..................................................................................... 15

    II.    Plaintiffs' Amended Complaint fails to state a claim .................................... 22

    A.    Plaintiffs Impermissibly Present Programmatic Claims, Unmoored from

        Discrete, Final Agency Action........................................................................ 22

    B.    Plaintiffs' APA Claims Rely on Matters Committed to Agency Discretion. ................ 29

    C.    Plaintiffs Fail to Plausibly State Any APA Claims. ....................................... 32

CONCLUSION.................................................................................................................... 34

# TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Aerotrade, Inc. v. Agency for Int'l Dev.*,
  387 F. Supp. 974 (D.D.C. 1974) ........................................................................... 20

*Alabama-Coushatta Tribe of Texas v. United States*,
  757 F.3d 484 (5th Cir. 2014) ........................................................................... 27, 29

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ............................................................................ 25

*Am. First Legal Found. v. U.S. Dep't of Agric.*,
  Civ. A. No. 22-3029 (BAH), 2023 WL 4581313 (D.D.C. July 18, 2023) .............................. 23

*Am. Freedom L. Ctr. v. Obama*,
  821 F.3d 44 (D.C. Cir. 2016) ............................................................................... 16

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ............................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 10, 33

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 9, 10

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................... 26, 27

*Bernstein v. Kerry*,
  962 F. Supp. 2d 122 (D.D.C. 2013), *aff'd* 584 F. App'x 7 (D.C. Cir. 2014) .................... *passim*

*Builders Bank v. Fed. Deposit Ins. Corp.*,
  846 F.3d 272 (7th Cir. 2017) ............................................................................... 29

*Chamber of Com. of U.S. v. EPA*,
  642 F.3d 192 (D.C. Cir. 2011) ............................................................................. 15

*Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Homeland Sec.*,
  387 F. Supp. 3d 33 (D.D.C. 2019) ......................................................................... 11

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................................... 11

*City of N.Y. v. U.S. Dep't of Def.*,
    913 F.3d 423 (4th Cir. 2019) ........................................................................................ 23

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................................ *passim*

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006) ..................................................................................... 23

*Conservation L. Found. v. Ross*,
    374 F. Supp. 3d 77 (D.D.C. 2019) ............................................................................... 32

*Ctr. for Biological Diversity v.* Bernhardt,
    442 F. Supp. 3d 97 (D.D.C. 202*0), aff'd sub nom. Ctr. for Biological Diversity v. Haa*land,
    849 F. App'x 2 (D.C. Cir. 2021) ................................................................................... 11

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ......................................................................................................... 9

*Drake v. FAA*,
    291 F.3d 59 (D.C. Cir. 2002) ....................................................................................... 30

*Fla. Audubon Soc'y v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) ....................................................................................... 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ....................................................................................................... 10

*Grant v. Ent. Cruises, Inc.*,
    282 F. Supp. 3d 114 (D.D.C. 2017) ............................................................................... 9

*Halley v. Blinken*,
    No. CV 24-571 (RDM), 2024 WL 4853874 (D.D.C. Nov. 21, 2024) ....................... 13

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ....................................................................................................... 29

*Humanitarian L. Project v. Reno*,
    205 F.3d 1130 (9th Cir. 2000) ..................................................................................... 30

*In re Papst Licensing GMBH & Co. KG Litig.*,
    585 F. Supp. 2d 32 (D.D.C. 2008), 602 F. Supp. 2d 17 (D.D.C. 2009) ................... 18

*Indigenous People of Biafra v. Blinken,*
    639 F. Supp. 3d 79 (D.D.C. 2022) ........................................................ 13

*Islamic Am. Relief Agency v. Gonzales,*
    477 F.3d 728 (D.C. Cir. 2007) ............................................................. 32

*Kaur v. U.S. Dep't of Homeland Sec.,*
    No. CV 23-03620 (CKK), 2024 WL 4165259 (D.D.C. July 19, 2024) .................................. 29

*Klamath v. Water Users Ass'n v. FERC,*
    534 F.3d 735 (D.C. Cir. 2008) ............................................................. 21

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State,*
    104 F.3d 1349 (D.C. Cir. 1997) ............................................................ 29

*Louisiana v. United States,*
    948 F.3d 317 (5th Cir. 2020) .............................................................. 23

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................. 8, 10, 11, 19

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) .............................................................. *passim*

*Mahorner v. Bush,*
    224 F. Supp. 2d 48 (D.D.C. 2002), *aff'd* 2003 WL 349713 (D.C. Cir. Feb. 12, 2003) ........... 13

*Moms Against Mercury v. FDA,*
    483 F.3d 824 (D.C. Cir. 2007) ............................................................. 9

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau,*
    785 F.3d 684 (D.C. Cir. 2015) ............................................................. 12

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ....................................................................... 32

*Nat'l Ass'n For The Advancement of Colored People v. Bureau of the Census,*
    945 F.3d 183 (4th Cir. 2019) ............................................................. 25

*Nat'l Ass'n of Home Builders v. Norton,*
    415 F.3d 8 (D.C. Cir. 2005) .............................................................. 26

*NB ex rel. Peacock v. District of Columbia,*
    682 F.3d 77 (D.C. Cir. 2012) ............................................................. 10

*Nicholas v. Biden,*
   Civ. A.  No. 1:24-cv-02530 (UNA), 2024 WL 4650922 (D.D.C. Oct. 22, 2024),
   *aff'd sub nom. Nicholas v. Trump,*
   No. 24-5287, 2025 WL 1503107 (D.C. Cir. May 27, 2025) .................................................. 14

*Norton v. S. Utah Wilderness All.,* ("SUWA"),
   542 U.S. 55 (2004) .................................................................................................... 22, 24

*Nyambal v. Mnuchin,*
   245 F. Supp. 3d 217 (D.D.C. 2017),
   *aff'd,* No. 17-5072, 2017 WL 5664980 (D.C. Cir. Nov. 8, 2017) ......................................... 20

*Palestine v. Biden,*
   107 F.4th 926 (9th Cir. 2024) ...................................................................................... 1

*Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs,*
   87 F.3d 1242 (11th Cir. 1996) ...................................................................................... 25

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
   489 F.3d 1279 (D.C. Cir. 2007) .................................................................................... 12

*Ramirez v. U.S. Immigr. & Customs Enf't,*
   310 F. Supp. 3d 7 (D.D.C. 2018) .................................................................................. 23

*Rempfer v. Sharfstein,*
   583 F.3d 860 (D.C. Cir. 2009) ...................................................................................... 25

*Rempfer v. U.S. Dep't of Air Force Bd. for Correction of Mil., Recs.,*
   538 F. Supp. 2d 200 (D.D.C. 2008) ............................................................................. 26

*Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.,*
   489 F.3d 1267 (D.C. Cir. 2007) .................................................................................... 21

*Scenic Am., Inc. v. Dep't of Transp.,*
   836 F.3d 42 (D.C. Cir. 2016) ........................................................................................ 19

*Schmidt v. U.S. Cap. Police Bd.,*
   826 F. Supp. 2d 59 (D.D.C. 2011) ................................................................................ 9

*Scolaro v. D.C. Bd. of Elections & Ethics,*
   104 F. Supp. 2d 18 (D.D.C. 2000) ................................................................................ 9

*Siegel v. Dep't of Treasury,*
   304 F. Supp. 3d 45 (D.D.C. 2018) ................................................................................ 20

*Sierra Club v. Peterson,*
  228 F.3d 559 (5th Cir. 2000) ........................................................................... 28, 29

*Sierra Club v. Jackson,*
  648 F.3d 848 (D.C. Cir. 2011) .............................................................................. 29

*Simon v. E. Ky. Welfare Rts. Org.,*
  426 U.S. 26 (1976) ............................................................................................... 16

*Smith v. United States,*
  237 F. Supp. 3d 8 (D.D.C. 2017), aff'd 715 F. App'x 10 (D.C. Cir. 2018) ......... 13

*Sparrow v. United Air Lines, Inc.,*
  216 F.3d 1111 (D.C. Cir. 2000) .......................................................................... 9, 18

*Talenti v. Clinton,*
  102 F.3d 573 (D.C. Cir. 1996) .............................................................................. 20

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015) ............................................................................... 30

*Thomas v. Union Carbide Agric. Prod. Co.,*
  473 U.S. 568 (1985) ............................................................................................. 13

*Tozzi v. Dep't of Health & Hum. Servs.,*
  271 F.3d 301 (D.C. Cir. 2001) .............................................................................. 15

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) ............................................................................................. 14

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs,*
  714 F.3d 186 (4th Cir. 2013) ........................................................................... 23, 28

*W. Org. of Res. Councils v. Zinke,*
  892 F.3d 1234 (D.C. Cir. 2018) .............................................................................. 9

*Webster v. Doe,*
  486 U.S. 592 (1988) ............................................................................................. 30

*West v. Lynch,*
  845 F.3d 1228 (D.C. Cir. 2017) ............................................................................ 19

*Widakuswara v. Lake,*
  No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ................................... 23

**STATUTES**

5 U.S.C. § 706 ........................................................................................................ 8, 25

5 U.S.C. § 551(13) ....................................................................................................... 22

5 U.S.C. § 701(a)(2) .............................................................................................. 29, 30

5 U.S.C. § 704 ............................................................................................................. 26

22 U.S.C. § 2151n ......................................................................................................... 3

22 U.S.C. 2304 .............................................................................................................. 3

22 U.S.C. § 2378d ................................................................................................. *passim*

28 U.S.C. 2401(a) .................................................................................................. 26, 34

The Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024
   (Pub. L. No. 118-47, Div. F) (FY 2024 SFOAA) ..................................................... 4

Full-Year Continuing Appropriations Act, 2025
   (Pub. L. No. 119-4, Div. A) ................................................................................... 4

### FEDERAL RULES

Fed. R. Civ. P. 12(b) ............................................................................................... 9, 29

## INTRODUCTION

On October 7, 2023, Hamas launched a severe attack on the State of Israel, kidnapping Americans and Israelis and killing scores of people. Since that time Israel has responded with military force. "Since October 7th, the United States has supported Israel through military, diplomatic, and financial means." *Def. for Child. Int'l-Palestine v. Biden*, 107 F.4th 926, 929 (9th Cir. 2024) (per curiam). Displeased with the ongoing conflict between Israel and Hamas, Plaintiffs seek to enjoin the United States of America from providing its ally with military aid. They allege that the United States is violating section 620M of the Foreign Assistance Act ("FAA") colloquially referred to as the Leahy Law (22 U.S.C. § 2378d), which requires that the United States withhold certain assistance from a security force unit if the Secretary of State has credible information that such unit committed a gross violation of human rights ("GVHR"). The Department meets this requirement through mechanisms such as vetting foreign military units for possible gross violations of human rights in connection with providing foreign military assistance. Plaintiffs' claims fail for several reasons.

First, Plaintiffs lack standing. In this action seeking prospective relief, Plaintiffs have failed to demonstrate an imminent injury in fact for what they claim are fears of physical harm and future loss of consortium claims. More problematically, they have failed to trace that prospective future injury to any particular foreign military unit, then to the United States' military aid to that unit, then to any credible reports of GVHRs with regard to that unit, then to the Secretary of State's alleged failure to appropriately consider this information. Simply put, their claim rests upon a speculative causal chain that the Supreme Court has made clear cannot satisfy standing, especially where the feared injury comes directly from the hands of an independent party not before the court. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). Even if Plaintiffs established a

traceable injury, their injury is not redressable by this Court, where it is entirely speculative as to whether or not an order prohibiting military aid to Israel would resolve their claimed future injury. Said differently, there is no plausible allegation that Israel would cease all military activity in Gaza, that it would not procure weapons from another source, or that any non-aid-prohibited military unit would not conduct military operations that could harm Plaintiffs.

Second, even if this Court found Plaintiffs had standing, which they do not, their claims are impermissible programmatic attacks that fail to plead the requisite final agency action under the APA. Plaintiffs entirely fail to circumscribe the allegations of the Amended Complaint to specific decisions or even to certain temporal periods. Instead, Plaintiffs allege that Israel has committed human rights violations since at least 1997 and that the United States has continued to provide funding for that time. Rather obviously, 20 years of decisionmaking by the Department of State is not a discrete final agency action for which the APA authorizes judicial review.

Third, Plaintiffs' APA claims center on subjects that are committed to the discretion of the Department of State ("State"). Plaintiffs generally allege that State has failed to deem any Israeli military unit ineligible from receiving United States assistance and that Israeli units commit widespread gross violations of human rights ("GVHRs"), so State must necessarily have failed to properly implement the Leahy Law. But such conclusion glosses over statutory exceptions to aid prohibition, including that contained in 22 U.S.C. § 2378d(b), which vests the Secretary with the discretion to "determine[] and report[] to the appropriate congressional committees that the government of such country is taking effective steps to bring the responsible members of the security forces unit to justice." *Id.*

For these reasons, the Court should dismiss Plaintiffs' Complaint.

## BACKGROUND

I.    **THE LEAHY LAW AND ISRAEL LEAHY VETTING FORUM**

Respect for human rights is a core principle of the United States, and promoting respect for human rights is a principal goal of U.S. foreign policy.

The State Leahy Law at section 620M of the Foreign Assistance Act of 1961 (Pub. L. No. 87-195 (as amended)) ("FAA"), 22 U.S.C. § 2378d, restricts the furnishing of assistance under the FAA or the Arms Export Control Act ("AECA") "to any unit of the security forces of a foreign country if the Secretary of State has credible information that such unit has committed a gross violation of human rights." 22 U.S.C. § 2378d(a). This provision was added to the FAA in 2007. Prior to that time, a substantially similar provision was enacted annually in each State Appropriations Act since 1997.

The Leahy Law does not define what constitutes a "gross violation of human rights." Consequently, State has historically looked to definitions in other sections of the FAA, including sections 116 (22 U.S.C. § 2151n) and 502B (22 U.S.C. § 2304), for guidance on the meaning of the term. These definitions are instructive in the understanding and application of the term "GVHR" under the Leahy Law. For example, section 502B provides that "the term 'gross violation of internationally recognized human rights' includes torture or cruel, inhuman, or degrading treatment or punishment, prolonged detention without charges and trial, causing the disappearance of persons by the abduction and clandestine detention of those persons, and other flagrant denial of the right to life, liberty, or the security of person." 22 U.S.C. § 2304(d)(1). In order for a security force unit to commit a GVHR for purposes of the Leahy Law, that unit must be acting under color of law, meaning that the unit or members of the unit must be acting, or appear to be acting, in their capacity as a security force.

State has understood the term "credible information" for the purposes of the Leahy Law to mean information that is sufficiently believable that a reasonable person would rely on such information in their decision-making process in implementing the Leahy Law. This understanding is consistent with section 7035(d)(3) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (Pub. L. No. 118-47, Div. F) (FY 2024 SFOAA), as carried forward by the Full-Year Continuing Appropriations Act, 2025 (Pub. L. No. 119-4, Div. A), which provides that "[f]or purposes of implementing section 620M of the Foreign Assistance Act of 1961, the term 'credible information' means information that, considering the source of such information and the surrounding circumstances, supports a reasonable belief that a violation has occurred[.]"

The Leahy Law (section 620M(b)) permits resumption of covered U.S. assistance if the Secretary of State determines and reports to Congress that the government of the relevant foreign country is taking effective steps to bring the responsible members of the security forces unit to justice. This process is commonly referred to as "remediation" of the relevant unit.

State implements the Leahy Law through mechanisms such as conducting human rights vetting for each foreign security force unit that is nominated to receive applicable U.S. assistance. This constitutes an internal review process conducted by various components within State (e.g., functional human rights and assistance experts as well as regional and country experts); other U.S. government agencies, as appropriate; and sometimes U.S. government engagement with foreign governments or international organizations. If State has credible information a foreign security force unit committed a GVHR, that unit is ineligible for applicable U.S. assistance until such time as the Secretary of State makes a determination and reports to Congress that the government of the relevant foreign country is taking effective steps to hold accountable the responsible members of the security forces.

If assistance to a foreign security force is provided in a manner in which the recipient unit or units cannot be identified prior to the transfer of assistance, section 620M(c) of the FAA requires the Secretary of State to regularly provide the recipient government with a list of security force units prohibited from receiving such assistance under the Leahy Law and requires that such assistance be made available subject to a written agreement in which the recipient government assents that it will comply with the prohibition. Consistent with section 620M(c), this list must be reported to Congress as well.

Because Israel has received assistance for which recipient units could not be identified in advance, State has followed the requirements of section 620M(c). For example, the Governments of the United States and Israel entered into an agreement on December 30, 2021, pursuant to which Israel agreed not to provide any assistance furnished by the United States under the FAA or AECA to units identified by the United States pursuant to the Leahy Law. Since 2020, State instituted a process to assess reports that Israeli security force units may have committed GVHRs, called the Israel Leahy Vetting Forum ("ILVF"). As a matter of practice, the U.S. government engages the government of Israel about these cases to ensure it has the most thorough and up-to-date information about the underlying incident and any Israeli response. There are separate forums for other foreign countries receiving assistance for which the recipient units cannot be identified prior to the transfer. The purpose of these fora is to review reports of alleged GVHRs by relevant partner security force units. Participants at the fora meetings have included representatives from the relevant regional bureau, the Bureau of Democracy, Human Rights and Labor, the Bureau of Political-Military Affairs, the U.S. embassy located in the relevant foreign country, the Office of the Legal Adviser, and the U.S. Department of Defense.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their Complaint on December 17, 2024, *see generally* Compl.; they amended the Complaint on March 31, 2025, Am. Compl., ECF No. 10.  Defendant submitted pre-motion letters in response to both the original and amended complaints, seeking leave to file a motion to dismiss.  The Court held a pre-motion status conference at which it encouraged the parties to consider a voluntary meeting to discuss Plaintiffs' concerns, and stated that Defendant would be able to file its motion to dismiss.  The parties did not agree to meet, and jointly filed a proposed briefing schedule on the instant motion to dismiss.

Plaintiffs are a group of foreign residents along with certain U.S domiciled individuals who have relatives in Gaza.  Plaintiffs Ahmed Moor, Said Assali, and Hadeel Assali – the sister of Said Assali – are United States citizens.  Am. Compl. ¶¶ 9, 11, 15, ECF No. 10.  Plaintiff Amal Gaza, who proceeds pseudonymously, resides in Gaza. *Id.* ¶ 5.  Plaintiff Shawan Jabarin resides in the West Bank. *Id.* ¶ 16.  Plaintiffs Gaza 2 and Gaza 3, both proceed pseudonymously and work in Gaza, but their citizenship and residency is unknown.  *Id.* ¶¶ 7-8.  All Plaintiffs allege either that they fear prospective death or injury and/or "imminent loss of consortium through the prospective death of or injury to" their family members, all of which Plaintiffs allege could be caused in the future by Israeli forces.  *E.g.* Am. Compl. ¶ 16 (prospective injury), 11 (loss of consortium).

No Plaintiff besides Gaza 3 alleges any past physical injury.  *Id.* ¶ 8 (Gaza 3 alleges he was injured twice in the head and once in the leg from what he alleges were Israeli bombings.).  Amal Gaza and Gaza 3 are the only two Plaintiffs who allege they have been displaced from their homes due to Israeli military activity.  *Id.* ¶¶ 5, 8.  All Plaintiffs besides Shawan Jabarin allege that they have lost family members as a result of the current conflict with Israel, though the circumstances of the loss and closeness of the family relationship vary for each.  *Id.* ¶¶ 5 (Amal Gaza allegedly lost unspecified family members in unspecified manners), ¶ 7 (Gaza 2 allegedly lost cousins and

their mother in a bombing which struck a shelter), ¶ 8 (Gaza 3 allegedly had several family members "disappear[]" in an airstrike and lost a cousin in an unspecified manner); ¶ 9 (Ahmed Moor allegedly lost an adult son in an "extrajudicial killing" in unspecified circumstances); ¶ 11 (Said Assali allegedly lost several cousins in an airstrike ); ¶ 15 (Hadeel Assali allegedly lost a relative of unspecified relation allegedly due to an Israeli sniper in unspecified circumstances).

No Plaintiff pleads specific facts about what injury they fear sustaining in the future the particular factual basis for their individual fear, or why such injury is "imminent."  Although all Plaintiffs assert loss of consortium claims, none besides Shawan Jabarin alleges having an immediate family relationship upon which to base such a claim.  *See id.* ¶ 5 (Amal Gaza claim tied to aunts and uncles); 7 ¶ (Gaza 2 discloses no family relationship for claim); 8 ¶ (Gaza 3 discloses no family relationship for claim); 9 ¶ (Ahmed Moor claim based on aunts and uncles); 11 ¶ (Said Assali claim tied to unspecified "family and relatives"); ¶ 15 (Hadeel Assali claim based on "relatives, including her uncles and aunts").

Plaintiffs generally allege that Israeli military units commit widespread human rights violations such that almost the entire military operating in Gaza and its senior military leadership should be prohibited from receiving United States assistance.  *See* Am. Compl. ¶ 75 (alleging that "a substantial number of, if not all, Israeli units operating in Gaza and the West Bank would be prohibited from receiving U.S. assistance due to credible information of unremediated GVHRs"); *id.* ¶ 76 (alleging that "[a]n appropriate State Department finding . . . should 'taint' all Israeli security force units operating the Occupied Palestinian Territory under [the Defense Minister, the Prime Minister, and commanders]' command and prohibit them from receiving U.S. aid.").  Plaintiffs allege generally that the Israeli military has been committing human rights violations

from 1997 through "last year," *id.* ¶¶ 53-70, though it is unclear whether any of those allegations relate to any Plaintiff personally.

Despite Plaintiffs' allegations, the State of Israel is not a party to this action. Instead, as relief, Plaintiffs seek to prospectively enjoin the United States from providing its ally Israel with military aid. Plaintiffs contend that it is "reasonably likely" that Israeli security units' ability to commit gross violations of human rights would be "materially diminished" if the United States "properly enforced the Leahy Law." *See, e.g.*, Am. Compl. ¶ 6.

Plaintiffs assert three APA claims. First, Plaintiffs allege under 5 U.S.C. § 706(2)(A) that Defendant failed to apply the Leahy Law by not prohibiting Israeli units from receiving U.S. assistance and failing to provide Israel with a list of prohibited units, which Plaintiffs characterize as arbitrary, capricious, and not in accordance with the law. Am. Compl. ¶¶ 82-86. Second, Plaintiffs assert under 5 U.S.C. § 706(2)(A) that Defendant arbitrarily and capriciously created a *de facto* exemption of Israel from the Leahy Law through the creation of the ILVF. *Id.* ¶¶ 87-90. Third, Plaintiffs claim under 5 U.S.C. § 706(1) that Defendant unlawfully withheld or unreasonably delayed agency action by failing to perform certain statutory duties under the Leahy Law. *Id.* ¶¶ 91-94.

Plaintiffs seek prospective injunctive relief in the form of (1) an order that "[c]ompel[s] Defendant to furnish the Government of Israel with a list of units determined to be ineligible for U.S. assistance under the Leahy Law. . ." and "obtain the required written assurances from the Government of Israel that such units will not receive U.S. security assistance, and to regularly update the list to ensure compliance with the statute;" and (2) a permanent injunction "prohibiting Defendant from providing any U.S. assistance to Israeli security units which credible information establishes have committed unremediated GVHRs." Prayer for Relief, Am. Compl. at 39-40.

## LEGAL STANDARDS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must dismiss claims over which it lacks Article III jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The "the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction over her claims." *Schmidt v. U.S. Cap. Police Bd.*, 826 F. Supp. 2d 59, 70 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).[1]  Indeed, it is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  Where, as here, "both standing and subject matter jurisdiction are at issue . . . a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other." *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007).  Further, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted); *accord Grant v. Ent. Cruises, Inc.*, 282 F. Supp. 3d 114, 116 (D.D.C. 2017).  The district court "must treat the complaint's factual allegations as true, and must grant [Plaintiff] the benefit of all inferences that can be derived from the facts alleged." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240-41 (D.C. Cir. 2018) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  However, Plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[1] Internal quotation marks and citations are omitted throughout this brief, unless noted.

*Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the district court does not need to accept as true legal conclusions set forth in the Complaint).

## ARGUMENT

Plaintiffs' Complaint suffers from three fundamental jurisdictional defects, any one of which is sufficient for the Court to dismiss Plaintiffs' Complaint.  First, Plaintiffs lack standing to challenge Defendant's implementation of the Leahy Law.  Plaintiffs were not plausibly suffering a concrete and particularized injury from alleged Leahy Law implementation failures at the time they filed their complaint.  And where Plaintiffs' request for prospective injunctive relief is premised on potential future injuries, Plaintiffs fail to demonstrate standing because their claimed injury—the fear of future gross violations of human rights via military attacks by a foreign sovereign—is neither imminent, traceable to Defendant's conduct, nor redressable by this Court.

## I.      THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CHALLENGE TO THE LEAHY LAW BECAUSE PLAINTIFFS LACK STANDING

Plaintiffs lack standing to challenge the United States' military aid to Israel because Plaintiffs' speculative claims have not established a concrete or imminent injury that is traceable to Defendants and redressable by this Court.  The standing inquiry contains three elements. *Lujan,* 504 U.S. at 560-61.  For Plaintiffs to establish standing:

> (1) they must have suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 81 (D.C. Cir. 2012).  Normally, standing is evaluated "at the outset of the litigation."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

A. **Plaintiffs Lack an Injury-in-Fact.**

Plaintiffs fail the first prong of the standing inquiry because their alleged injury is neither "concrete" nor "imminent." *Lujan*, 504 U.S. at 560-61. Plaintiffs allege that they fear death, injury, or loss of consortium because the United States is providing security assistance to Israel. *E.g.*, Am. Compl. ¶¶ 5, 15. But courts have recognized that "the specific fear arising from a foreign policy, no matter how severe a plaintiff's disagreement with that foreign policy may be, cannot constitute injury-in-fact without a concrete harm." *See*, *e.g.*, *Bernstein v. Kerry*, 962 F. Supp. 2d 122, 127 (D.D.C. 2013), *aff'd* 584 F. App'x 7 (D.C. Cir. 2014). Although Plaintiffs allege past harms suffered at the hands of the Israeli military, Am. Compl. ¶¶ 5, 7-9, 12-13, 15-16, allegations of past harm are not enough to establish the type of imminent future injury necessary for an injunction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 104-05 (1983). "As a general rule," where a plaintiff "'seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing.' Instead, the plaintiff must 'establish an ongoing or future injury that is certainly impending.'" *Ctr. for Biological Diversity v. Bernhardt*, 442 F. Supp. 3d 97, 104 (D.D.C. 2020), *aff'd sub nom. Ctr. for Biological Diversity v. Haaland*, 849 F. App'x 2 (D.C. Cir. 2021) (quoting *Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 47 (D.D.C. 2019)); *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

This is fatal to Plaintiffs' claims, which seek prospective relief in the form of: (1) an order that "[c]ompel[s] Defendant to furnish the Government of Israel with a list of units determined to be ineligible for U.S. assistance under the Leahy Law. . ." and "obtain the required written assurances from the Government of Israel that such units will not receive U.S. security assistance, and to regularly update the list to ensure compliance with the statute;" and (2) a permanent injunction prohibiting Defendant from providing any U.S. assistance to Israeli security units which credible information establishes have committed unremedied GVHRs." Prayer for Relief, Am.

Compl. at 39-40; *see also Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 689 (D.C. Cir. 2015) (holding that it is not "enough for [a plaintiff] to demonstrate past harm when she seeks only forward-looking relief; she must show [she] is suffering an ongoing injury or faces an immediate threat of injury.").

Moreover, Plaintiffs "speculative chain of possibilities does not establish that injury based on potential future [conduct] is certainly impending." *See Clapper*, 568 U.S. at 415; *id*. at 418 ("subjective fear of surveillance does not give rise to standing"). The Supreme Court's decision in *Clapper* is instructive. *Id.* There, the plaintiffs alleged that "there is an objectively reasonable likelihood that their communications with foreign contacts will be intercepted . . . at some point in the future." *Id.* at 410. Noting that the plaintiffs failed to offer any evidence that their communications had been monitored, the Supreme Court found that the plaintiffs "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired," because "it is speculative whether the Government will imminently target communications to which respondents are parties." *Id.* at 411.

The same is true here. Accepting as true Plaintiffs' allegations about their fears of future Israeli military actions, they have failed to plead facts moving their claims beyond speculation. In the context of the relief they seek, they would have to plead that particular Israeli military units will, in the future, will target Plaintiffs specifically. But Plaintiffs fail to plead what future Israeli military action will be. Like in *Clapper*, where it was "speculative whether the Government will imminently target communications to which respondents are parties," here it is speculative what actions a foreign military may take that harms Plaintiffs. *Id.* at 411. Plaintiffs' theory fails because a claimed injury cannot be "remote, speculative, conjectural, or hypothetical." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007). As such, Plaintiffs

fail to establish that it is "certainly impending" that they will suffer an injury in fact. *Clapper,* 568 U.S. at 409; *see also Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985) (observing that courts dismiss as unfit for judicial review cases based on "contingent future events that may not occur as anticipated, or indeed may not occur at all").

Courts routinely hold that the plaintiff lacks a cognizable injury-in-fact when a plaintiff files a lawsuit seeking prospective relief concerning U.S. foreign affairs, funding decisions, and foreign military decisions specifically. *See*, *e.g.*, *Bernstein*, 962 F. Supp. 2d at 127 (granting motion to dismiss for lack of standing and holding claims by American citizens in Israel who claimed State's funding to the Palestinian Authority without following statutory requirements caused them to suffer an injury-in-fact because they live in constant fear that their lives and livelihood are at risk); *Mahorner v. Bush*, 224 F. Supp. 2d 48, 50 (D.D.C. 2002), *aff'd* 2003 WL 349713, at *1 (D.C. Cir. Feb. 12, 2003) (holding no injury-in-fact where plaintiff alleged the President's decision to initiate war in Iraq constituted a major threat that plaintiff would lose his life in the military response); *Indigenous People of Biafra v. Blinken*, 639 F. Supp. 3d 79, 85 (D.D.C. 2022) (concluding that the John Does who "reasonably fear[] injury at the hands of the Nigerian government"—after the United States's sale of aircrafts to the Nigerian government—failed to plead a sufficient injury-in-fact); *Halley v. Blinken*, No. CV 24-571 (RDM), 2024 WL 4853874, at *1 (D.D.C. Nov. 21, 2024) (dismissing for lack of standing claims by U.S. citizens, some of whom are domiciled in Israel, who were direct and indirect victims of the October 7, 2023, which claims sought an order prohibiting the Department of State from providing any future funding to UNRWA); *Smith v. United States*, 237 F. Supp. 3d 8, 12-13 (D.D.C. 2017), *aff'd* 715 F. App'x 10 (D.C. Cir. 2018) (dismissing challenge to foreign aid to Israel for lack of standing, rejecting plaintiff's argument for standing as a federal taxpayer). As this Court has stated multiple

13

times, "the specific fear arising from a foreign policy, no matter how severe a plaintiff's disagreement with that foreign policy may be, cannot constitute an injury-in-fact without a concrete harm." *Bernstein*, 962 F. Supp. 2d at 127.

Likewise, Plaintiffs present their purported injury as stemming from alleged failures by Defendant to follow the Leahy Law procedures. But, "[a]s explained by the Supreme Court, standing cannot be based on plaintiffs' interest, common among all citizens, in the government following the law." *Id.* at 128 (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83 (1982)). Here, Plaintiffs attempt to advance the same sort of generalized gripes about State's supposed failure to follow the Leahy Law procedures that could be advanced by any citizen. Such an argument does not adequately establish constitutional standing.

For these reasons, just last year, this Court dismissed, for lack of standing, similar claims of a plaintiff seeking to enjoin U.S military aid to Israel alleged to have been provided in contravention of the Leahy Law. *See Nicholas v. Biden*, Civ. A. No. 1:24-cv-02530 (UNA), 2024 WL 4650922, at *1 (D.D.C. Oct. 22, 2024), *aff'd sub nom. Nicholas v. Trump*, No. 24-5287, 2025 WL 1503107 (D.C. Cir. May 27, 2025). In *Nicholas*, the Court found Plaintiff had not established standing where he had not articulated a harm he personally sustained because of defendant's alleged actions and "insofar as he raises general grievances about the federal government and its officials, he fails to demonstrate standing to sue." *Id.* This Court should likewise dismissed Plaintiffs' claims for lack of standing where Plaintiffs have failed to establish an imminent injury-in-fact.

### B. Plaintiffs Fail to Plausibly Plead that their Alleged Future Injury is Traceable to Defendant's Conduct.

Plaintiffs have not established that their claimed injury is traceable to Defendants. Plaintiffs' alleged injury—a current fear of Israeli military GVHRs stemming from U.S. military aid—is not fairly traceable to State's implementation of the Leahy Law. *See Bernstein*, 962 F. Supp. 2d at 129 ("To trace the alleged injury in this case to the challenged actions of defendants, this Court would have to speculate on whether defendants' funding policies were in fact aiding terrorists, whether the terrorists were using these funds for activities intended to harm plaintiffs, and whether these activities are leading to a certainly impending injury for plaintiffs."). The threat of military activities in Gaza and the West Bank has existed for decades wholly apart from the funding decisions challenged in the Amended Complaint. But to establish standing, plaintiffs "must show that, absent the government's allegedly unlawful actions, there is a substantial probability that they would [not be injured]." *See Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011) (cleaned up); *Tozzi v. Dep't of Health & Hum. Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001) ("Where, as here, the alleged injury flows not directly from the challenged agency action, but rather from independent actions of third parties, [courts] have required only a showing that the agency action is at least a substantial factor motivating the third parties' actions."); *accord Clapper*, 568 U.S. at 414 n.5 ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm."). And a plaintiff may not "rely on speculation about the unfettered choices made by independent actors not before the courts." *Id.* Ultimately, Plaintiffs cannot show a substantial probability that they would not fear military strikes absent the funding decisions challenged here, nor that the agency actions at issue are a substantial factor motivating the alleged third-party GVHRs.

15

Article III requires that an alleged injury be fairly "traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976). In other words, Plaintiffs must establish that it is "substantially probable . . . that the challenged acts of the defendant, not some absent third party" causes their fear of death, physical harm, or loss of consortium arising from GVHRs. *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996).

To do so here, the Court would have to (1) determine the injury-in-fact issues identified above, i.e., determine the future speculative military operations of the Israeli military and conclude that the Israeli government will cause harms to the Plaintiffs of this action; (2) determine that the military action that will harm Plaintiffs results from actions that would be considered GVHRs and not permissible military action; (3) determine which specific units of the Israeli military will commit GVHRs that will harm Plaintiffs; (4) determine that the specific military units alleged to have committed GVHRs have and will continue to receive U.S. military aid; (5) review how State investigated whether and what alleged GVHRs those specific units allegedly committed; and (6) where the Secretary of State has made a determination with respect to a unit under section 620M(b), conclude that the Israeli government is not taking effective steps to bring to justice the members of the unit responsible for the GVHR. *See Bernstein*, 962 F. Supp. 2d at 129.

Plaintiffs fail to allege facts supporting each of those speculative links. *See Clapper*, 568 U.S. at 414 n.5 ("Plaintiffs cannot rely on speculation about the unfettered choices made by independent actors not before the court."); *Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) ("The greater number of uncertain links in a causal chain, the less likely it is that the entire chain will hold true."); *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 383 (2024) ("The causation requirement also rules out attenuated links—that is, where the government action

is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing.").

First, while Plaintiffs complain about the possibility of future harm from the Israeli military, those actions do not necessarily equate to gross violations of human rights. And any assessments thereof by State also need to take into account international humanitarian law and what is permissible under that framework (e.g., taking into account principles of proportionality and military necessity). Acts that typically constitute GVHRs include extrajudicial killing, torture/cruel, inhuman and degrading treatment or punishment, or arbitrary detention. Thus, while Plaintiff Amal Gaza complains of displacement, Am. Compl. ¶ 5, that is not inherently a gross violation of human rights. Gaza 2 complains of being sheltered "near" a shelter which was struck by a bomb, *id.* ¶ 7, but that says nothing about whether the operation was targeting terrorists who were legitimate military targets. Gaza 3 complains that their relatives were killed in airstrikes, *id.* ¶ 8, but fails to explain whether those relatives were members of or were co-located with Hamas or other legitimate military targets or whether the airstrikes targeted terrorists who were legitimate military targets. Ahmed Moor alleges Israeli security forces killed his cousin's 19-year-old son. *Id.* ¶ 9. Setting aside that no loss of consortium claim (his specific asserted injury-in-fact) is plausible for the attenuated family connection, Plaintiffs say nothing about the son's affiliation with Hamas, whether he had a weapon, the circumstances under which he was killed, whether he adhered to prior instructions or advance warning from the Israeli military, or any other pertinent considerations. Plaintiffs complain of airstrikes, *id.* ¶ 12, but provide no indication that airstrikes intentionally targeted the people they struck as opposed to being accidental civilian harm within the scope of permissible international law norms. Simply put, while Plaintiffs imply that the mere existence of civilian harm or death means that there must have been gross violations of human

rights, such assessments are more complicated and nuanced, particularly in the context of an ongoing armed conflict.

Second, for at least some of the speculative questions identified above (5 and 6), the Amended Complaint appears to concede that State did review Israeli units for GVHRs, concluded that five such units had committed GVHRs, and the Secretary of State importantly determined that each had "effectively remediated these violations." *Id.* ¶¶ 40, 41, 45 (alleging that on August 9, 2024, "Secretary Blinken found that Israel had taken sufficient remediation to address the abuses by Netzah Yehuda and closed the matter"). As such, Plaintiffs appear to have pleaded themselves out of court. *See Sparrow*, 216 F.3d at 1116 ("In some cases, it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible."); *In re Papst Licensing GMBH & Co. KG Litig.*, 585 F. Supp. 2d 32, 35 n.2 (D.D.C. 2008) (noting plaintiff pleaded himself out of court), *order amended on reconsideration,* 602 F. Supp. 2d 17 (D.D.C. 2009).

Third, the Amended Complaint repeatedly challenges whether certain State decisions or actions were, in fact, correct, which is a distinct inquiry from whether the agency conducted a review consistent with the Leahy Law. With respect to Plaintiffs' allegations about remediation, for example, they allege that State concluded GVHRs were remediated, but then argue that State's decisions were substantively incorrect. *See, e.g.*, Am. Compl. ¶ 42-47 (claiming that similar remediation would not have been acceptable to State if committed by any other country). Setting aside that the Amended Complaint does not plead *facts* that would support that speculation, such argument about whether State correctly found certain remediation to be sufficient highlights that Plaintiffs ask this Court to improperly wade into decision making committed to the sound discretion of the political branches. *See, e.g., Def. for Children Int'l-Palestine v. Biden*, 107 F.4th

926, 930–31 (9th Cir. 2024) (dismissing claims challenging foreign aid to Israel and explaining "the management of foreign affairs predominantly falls within the sphere of the political branches," with "the courts consistently defer[ring] to those branches.")

At bottom, Plaintiffs cannot establish that their prospective future injuries are fairly traceable to Defendant's allegedly unlawful conduct.

### C.    Plaintiffs failed to Plausibly Plead that their Alleged Injury is Redressable by this Court.

Similarly, Plaintiffs cannot demonstrate that their alleged injury is redressable by this Court. To establish standing, a plaintiff must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. But it is "nothing more than conjecture" to claim that a ban on "U.S. assistance to Israeli security units which credible information establishes have committed unremediated GVHRs" Am. Compl. ¶ 74, Prayer for Relief ¶ (d), "will reduce . . . plaintiffs' subjective fears." *Bernstein*, 962 F. Supp. 2d at 129; *see also Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 50 (D.C. Cir. 2016) (noting that where redressability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, it becomes substantially more difficult to establish" standing); *West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017) ("When conjecture is necessary, redressability is lacking."). Simply put, Plaintiffs present nothing more than speculation that a limited reduction in U.S. military aid to certain Israeli military units will prevent the alleged harms to Plaintiffs and their family members residing in Gaza and the West Bank.

The Executive Branch is tasked with determining whether the provision of foreign aid will contribute to the foreign policy interests of the United States. A belief that a change in policy would reduce Plaintiffs' fear of injury at the hands of a foreign military "is, at best, mere

speculation." *Bernstein*, 962 F. Supp. 2d at 130; *Talenti v. Clinton*, 102 F.3d 573, 575-78 (D.C. Cir. 1996) (holding that a plaintiff lacked standing to require the government to withhold assistance from Italy under a statute prohibiting assistance to governments that had expropriated U.S. persons' property because the President could waive the prohibition and "[e]ven the improbable scenario of a decision to withhold assistance from Italy does not redress Talenti's injury" due to the uncertainty about how Italy would react); *Siegel v. Dep't of Treasury*, 304 F. Supp. 3d 45, 53-55 (D.D.C. 2018) (concluding that plaintiffs whose property was seized by Israeli settlors lacked standing to enjoin the United States from providing aid to Israel because the attenuated chain of events from sending U.S. aid to the return of the plaintiffs' property "involved numerous third parties," whose actions and reactions were impossible to predict); *Nyambal v. Mnuchin*, 245 F. Supp. 3d 217, 225 (D.D.C. 2017), *aff'd*, No. 17-5072, 2017 WL 5664980 (D.C. Cir. Nov. 8, 2017) (finding that "there is considerable uncertainty' as to whether the actions that Mr. Nyambal suggests the Secretary could take to coerce the IMF into implementing best practices for the protection of whistleblowers would aid [him] . . . or would tend to drive [the IMF] into even greater intransigence"); *Aerotrade, Inc. v. Agency for Int'l Dev.*, 387 F. Supp. 974, 975-76 (D.D.C. 1974) (concluding that a plaintiff lacked standing to direct that all assistance to Haiti be terminated pursuant to a provision that prohibited assistance to any government that repudiates a contract with a U.S. citizen because the President could waive the prohibition and there was "considerable uncertainty as to whether [an assistance cutoff] would aid plaintiff in collecting its debt or would tend to drive Haiti into even greater intransigence").

While Plaintiffs allege the United States provides meaningful military assistance to Israel, Am. Compl. 48-52, their Prayer for Relief seeks to limit funding only to those Israeli security units which "have committed unremediated GVHRs." Prayer for Relief, ¶ (d).  Consequently, it appears

that Plaintiffs seek only a limited reduction in United States' military aid to Israel. Especially if that is true, it would be speculative to assume that Israeli's ability to continue its military operations will be substantially limited. Even if the United States' military aid was more significantly limited, Plaintiffs provide no basis from which to conclude that Israel, an independent sovereign state with unfettered decisionmaking ability, would either voluntarily decide to cease its military activities in Gaza or that it would not seek to obtain necessary armaments from another country.

Moreover, redressability requirement necessitates more than "mere[] [] speculation as to what third parties will do in response to a favorable ruling." *Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 489 F.3d 1267, 1274 (D.C. Cir. 2007). But it is pure speculation whether any unknown, unnamed third parties will cease funding to Israel regardless of any action by State. *Klamath v. Water Users Ass'n v. FERC*, 534 F.3d 735, 739 (D.C. Cir. 2008) (stating that where relief "depends on actions by a third party not before the court, the [plaintiffs] must demonstrate that a favorable decision would create a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered"). Plaintiffs likewise offer nothing but speculation for their assertion that a more vigorous application of the Leahy Law would serve as a deterrent throughout the entire Israeli military, such that their alleged risk of future injury would be reduced. Because Plaintiffs' allegations do not demonstrate a significant likelihood that Israel would change its military operations or that third parties would stop funding Israel or providing it with military aid if certain Israeli units are subject to the restriction on assistance under the Leahy Law, which would in turn reduce Plaintiffs' fear of injury, Plaintiffs cannot show redressability for an alleged failure to apply that restriction to units of the Israeli military. *See id.* At bottom, regardless of what the Court rules, Israel will retain that unfettered decisionmaking

ability and Plaintiffs fears of injury at the hands of the Israeli military are not redressable through this proceeding.

*      *      *

For the foregoing reasons, this Court should dismiss Plaintiffs' complaint for lack of standing where they fail to establish an imminent injury related to possible future military action by a third-party, where the asserted injury is not traceable the Defendant's conduct because it relies on layer upon layer of speculation, and where, in any event, the prospective future injury by an independent sovereign nation is not likely to be abated by any conceivable decision of this court and is, therefore, not redressable.

## II.    PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM

### A.    Plaintiffs Impermissibly Present Programmatic Claims, Unmoored from Discrete, Final Agency Action.

Apart from the lack of jurisdiction over Plaintiffs' Leahy Law challenge, the three claims presented in their Amended Complaint independently fail because they do not challenge discrete, final agency action.  Plaintiffs do not challenge a particular review or funding decision, nor do they limit their claim to a specific fiscal year.

A plaintiff cannot invoke the APA to attack the entirety of government programs "consisting principally of . . . many individual" activities. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990). "Under the terms of the APA, [Plaintiffs] must direct [their] attack against some particular 'agency action' that causes [them] harm." *Id.* at 891.  Plaintiffs' challenge must target a "circumscribed, discrete agency action[]" that does not present a "broad programmatic attack" on government operations.  *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 62-64 (2004); *see* 5 U.S.C. § 551(13) (defining "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.").  The APA does not

provide for "general judicial review of [an agency's] day-to-day-operations," *Lujan*, 497 U.S. at 899, like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (cited approvingly in *Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020).  Such limitations ensure that changes to government-wide initiatives come from "the halls of Congress, where programmatic improvements are normally made," not from "court decree." *Lujan*, 497 U.S. at 891; *City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (this "ensures that judicial review does not reach into the internal workings of the government, and is instead properly directed at the effect that agency conduct has on private parties").

Consistent with these principles, the APA does not permit Plaintiffs to "seek *wholesale* improvement" of agency management "by court decree"—even in the face of allegations of "rampant" violations of law.  *Lujan*, 497 U.S. at 891; *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 20 (D.D.C. 2018) (APA "precludes attacks that seek broad programmatic improvements of agency behavior"); *see also Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *3 (D.C. Cir. May 3, 2025) ("plaintiffs may not use the APA to mount wholesale challenges to an agency's entire program" (citation omitted)).  "Consequently, as each case only presents the court with a narrow question to resolve, [the court] can have no occasion to order wholesale reform of an agency program." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006).

Plaintiffs' attack on the government's "on-going executive policymaking" exemplifies an impermissible programmatic attack.  *Am. First Legal Found. v. U.S. Dep't of Agric.*, Civ. A. No. 22-3029 (BAH), 2023 WL 4581313, at *7 (D.D.C. July 18, 2023).  So broad and unbounded is this challenge that Plaintiffs attack the entirety of the ILVF and all of its procedures, Am. Compl.

¶¶ 87-90 (Count Two); and alleged failures of State to perform multiple categories of almost all duties under the Leahy Law without specification of even a time range, *id.* ¶¶ 82-86, 91-94 (Counts One and Three).  And Plaintiffs' prayer for relief is equally unbounded.  *See id* .at 39, ¶ (a) (requesting the Court to declare that Defendant's unspecified "actions and omissions" are arbitrary, capricious"); *id.* ¶ (b) (declare that the "ILVF and its associated procedures are arbitrary and capricious").

Such an attack on unspecified agency plans and activities could not be farther from a challenge to discrete and reviewable "agency action." Indeed, courts regularly find that significantly narrower programs operated by a *single* agency are not amenable to APA review. *See, e.g.*, *SUWA*, 542 U.S. at 64-67.  In *SUWA*, the Supreme Court considered plaintiffs' claims that the Bureau of Land Management failed to manage off-road vehicle use in federal lands classified as wilderness study areas in a manner so as not to impair the suitability of such areas for preservation as wilderness or to manage public lands in accordance with land use plans. *Id.* at 65-67. The Court rejected such claims, concluding that "[t]he prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA." *Id.* at 67; *see also Lujan*, 497 U.S. at 890-91 (Plaintiffs "cannot seek *wholesale* improvement of [alleged] program by court decree" where program in question "extends to, currently at least, 1250 or so individual" determinations (citation omitted)). Notwithstanding the Supreme Court's clear pronouncement for the same style of grievance, Plaintiffs' Amended Complaint generally alleges that all of State's actions related to vetting Israeli military units are deficient and that State has not been following the Leahy Law.  As the Court instructed in *SUWA*, this cannot suffice.  *See SUWA*, 542 U.S. at 62-66 (holding that the APA does not permit claims about "[g]eneral deficiencies in compliance" with a statutory mandate).  And, if

the suit were to proceed, it is entirely unclear how the Court could begin to evaluate whether each and every agency activity complained of was "arbitrary and capricious," or "contrary to law and the constitution." *See* 5 U.S.C. § 706(2).

A wholesale challenge like Plaintiffs' is impossible to litigate under the mechanics of judicial review that the APA contemplates. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal," "[t]he entire case on review is a question of law," and it "is based on [and limited to] the agency record." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (citation omitted); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Wholesale challenges to programmatic decision-making undermines the agency's ability to "compil[e] and organiz[e] the complete administrative record", *see Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.2 (11th Cir. 1996), because there is no discrete agency action, as necessary for the parties to proceed to summary judgment, if necessary. Nor is it possible for the Court to apply the applicable standard of review, *see* 5 U.S.C. § 706, to the dozens of purported agency actions. This required "case-by-case approach" *Lujan*, 497 U.S. at 894, allows the dispute to be "reduced to more manageable proportions, and its factual components fleshed out," *id.* at 891, which facilitates meaningful review.

Creating a record is impossible in this case where Plaintiffs have not clearly identified a discrete time period at issue in this action, *see* Am. Compl. ¶¶ 53-73 (making broad allegations about GVHRs by Israel from 1997 to 2023), much less identified the discrete agency action, what form it took, or when it happened with respect to any of the GVHRs alleged in the Amended Complaint. The impossibility of this task is a good indication that "the broad, sweeping nature of the allegations that the plaintiffs have elected to assert" are not cognizable under the APA. *Nat'l*

*Ass'n For The Advancement of Colored People v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019).

A litany of agency activities going back two decades is simply not the type of "agency action" for which the APA authorizes suit. *See generally* Am. Compl. ¶¶ 53-69 (alleging different Israeli military units have committed GVHRs in various forms on numerous seemingly unrelated occasions); *id.* ¶¶ 53, 56, 59 (each discussing events going back to 1997 and making broad allegations about the time period from 1997-2019).[2] Moreover, there is no apparent connection between the time periods in which Plaintiffs allege Israeli units committed GVHRs and the time periods in which they discuss U.S. funding to Israel. *Compare* Am. Compl. ¶¶ 53-69 *with id.* ¶¶ 48-52 (discussing funding to Israel). The Amended Complaint sheds no light into how many decisions over the past 28 years Plaintiffs intend to challenge in this action. As the Supreme Court has explained, it is "entirely certain that the flaws in the entire 'program'—consisting . . . [of] many individual actions . . . , and presumably actions yet to be taken . . .—cannot be laid before the courts for wholesale correction under the APA . . . ." *Lujan*, 497 U.S. at 892–93. In short, Plaintiffs' claims are not cognizable under the APA.

In addition, "an agency action must be final in order to be judicially reviewable." *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005); *see* 5 U.S.C. § 704 ("final agency action for which there is no other adequate remedy in a court [is] subject to judicial review"). Finality is governed by a two-part test. First, the action under review "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Norton*, 415 F.3d at 13 (quoting *Bennett v. Spear,* 520 U.S. 154, 177–78

---

[2] This broad and old time period is particularly problematic, because APA claims are subject to a six-year statute of limitations, so if Plaintiffs are attempting to assert claims before 2019 they are time barred. *See* 28 U.S.C. § 2401(a); *Rempfer v. U.S. Dep't of Air Force Bd. for Correction of Mil. Recs.*, 538 F. Supp. 2d 200, 206 (D.D.C. 2008) (explaining that APA claims are subject to Section 2401(a)'s six-year time limitation).

(1997)). Second, the action must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett,* 520 U.S. at 178).  Plaintiffs fail to satisfy either of these criteria.

Here, Plaintiffs' Amended Complaint does not challenge a discrete, final agency action, and instead seeks to superintend Defendants' review consistent with the Leahy Law and funding decisions generally.  The Amended Complaint challenges Defendant's overall provision of foreign military aid to Israel—which consists of numerous discrete decisions by numerous Departments and bureaus—thereby highlighting the amorphous nature of their claims.  *See, e.g.*, Am. Compl. ¶ 33 (alleging "Multiple State Department bureaus and offices participate in the ILVF, including the Bureau of Democracy, Human Rights, and Labor, the Bureau of Political-Military Affairs, the Bureau of Near Eastern Affairs, the U.S. Embassy in Jerusalem, and the Office of Legal Advisor. The Department of Defense also participates.").  Consequently, Plaintiffs appear to challenge countless individual decisions over a multi-year period, some of which are still being made today. *See, e.g.*, Am. Compl. ¶ 7 (alleging "trauma" by the war in Gaza since 2008-2009); *id.* ¶¶ 53-70 (allegations about Israel's GVHRs from 1997 through "the past year"); *see Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 490-91 (5th Cir. 2014) ("The fact that the Tribe is not seeking wholesale reform of every single mineral permit, lease, or sale . . . does not diminish the scale of the relief sought . . . The challenge is to the way the Government administers these programs and not to a particular and identifiable action taken[.]").

Moreover, Plaintiffs have not "suffered legal wrong because of" any purported or at least specified final agency action. *Lujan*, 497 U.S. at 882-83.  They do not point to any alleged harm caused *to them* by a particular policy decision or when it supposedly occurred; instead, Plaintiffs claim harm while simultaneously attacking a multitude of alleged State actions and inactions.

27

But each review that State conducts to determine whether credible information supports a finding that a foreign military unit committed a GVHR, each decision by the Secretary that a nation took "effective steps" to bring a unit to justice, and each funding distribution is inherently unique: occurring at a particular moment in time, subject to facts then known to State about the foreign military unit, subject to a specific appropriations act, and subject to the particular requirements and restrictions applicable to funds provided in that appropriations act. Plaintiffs cannot bring three APA claims seeking relief against each and every individualized review and each funding decision for an unspecified period of time. That is exactly what Justice Scalia's opinion in *National Wildlife Federation* rejected, in holding that plaintiffs could not challenge a single purported "program" that was in actuality made up of "1250 or so individual classification terminations and withdrawal revocations." *Id.* at 890 (cleaned up). A plaintiff's obligation to limit their challenge to "some concrete action" applies regardless of whether they believe that "violation of the law is rampant within th[e] program." *Id.* at 891; *see also, e.g.*, *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (rejecting a claim where plaintiffs did not "limit their challenge to individual sales," but instead "used these sales as evidence to support their sweeping argument that the Forest Service's 'on-the-ground' management of the Texas forests over the last twenty years violates the [law]"); *Vill. of Bald Head Island*, 714 F.3d at 194 (even where claims limited to specific project at specific physical location, plaintiffs could not challenge "implementation" of the project because it would require "general judicial review of the [agency's] day-to-day operations").

Indeed, Plaintiffs' claims here are not limited to a discrete universe of agency actions at all—they expressly seek to adjudicate Defendants' *ongoing* compliance with legal requirements. *See, e.g.*, Prayer for Relief, Am. Compl. ¶ (a) (requesting a declaration "that Defendant's actions

and omissions by failing to substantively and procedurally apply the Leahy Law to Israeli security units" are arbitrary, capricious, and an abuse of discretion).  Seeking forward-looking relief against agency actions that have not yet occurred is a telltale sign of an impermissible programmatic challenge.  *See Alabama-Coushatta Tribe of Texas*, 757 F.3d at 490 ("These are allegations of past, ongoing, and future harms, seeking 'wholesale improvement' and cover actions that have yet to occur."); *Sierra Club*, 228 F.3d at 567-68.

In short, Plaintiffs cannot bring these amorphous APA claims against State and thereby obtain judicial review over the Department's general implementation of the Leahy Law, comprised of numerous individual review actions of foreign units and funding decisions, made by multiple different internal and external stakeholders over a lengthy period of time.  Because Plaintiffs' Amended Complaint fails to challenge a discrete, final agency action taken by State, the APA claims in the Amended Complaint should be dismissed.

### B.  Plaintiffs' APA Claims Rely on Matters Committed to Agency Discretion.

Plaintiffs claim that Defendant has failed to perform non-discretionary duties under the Leahy Law.  Am. Compl. ¶¶ 92-93.  However, Plaintiffs' claim is wrong on the law and short of contrary facts.  Plaintiffs fail to state an APA claim because the Leahy Law commits to the discretion of the Secretary of State the decision of whether there is credible information that a foreign military unit committed a GVHR and whether the foreign nation has appropriately remediated the issue.[3]

---

[3] There is a circuit split on whether arguments that agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(2), concern a court's jurisdiction or go to the merits of a case.  *See Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274-75 (7th Cir. 2017) (discussing disagreement).  The D.C. Circuit has held that such arguments are not jurisdictional and are resolved under Rule 12(b)(6).  *See Kaur v. U.S. Dep't of Homeland Sec.*, No. CV 23-03620 (CKK), 2024 WL 4165259, at *2 (D.D.C. July 19, 2024); *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).  In any event, the claim cannot proceed past the pleading stage.

It is well established that the APA does not provide a cause of action in cases where the challenged agency action is committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2). The reason for this exception to the APA is that a statute committing an action to the discretion of the agency provides no justiciable standards by which a court may review the agency's decision. *Webster v. Doe*, 486 U.S. 592, 599–600 (1988). This is true "even where Congress has not affirmatively precluded review[.]" *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). In looking for a judicially manageable standard with which to interpret the Secretary's authority and discretion to evaluate reports that foreign military units may have committed GVHRs and provide foreign military aid in compliance with the Leahy Law, the Court should consider the statutory language and structure as well as the nature of the agency decision. *See Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997); *Texas v. United States*, 809 F.3d 134, 165 (5th Cir. 2015) ("[T]here is no judicial review of agency action where statutes granting agency discretion are drawn in such broad terms that in a given case there is no law to apply, such as the allocation of funds from a lump-sum appropriation." (citation modified)).

Here, the Leahy Law requirements discussed in the Amended Complaint defer the pertinent actions challenged by Plaintiffs to the discretion of the Secretary of State. The prohibition on assistance to a foreign unit applies only "if the Secretary of State has credible information that such unit has committed a gross violation of human rights." 22 U.S.C. § 2378d(a). The exception to that rule likewise vests responsibility for another discretionary determination in the Secretary. *Id.* § 2378d(b) (prohibition shall not apply "if the Secretary determines and reports to the appropriate congressional committees that the government of such country is taking effective steps to bring the responsible members of the security forces unit to justice."). Section 2378d(b) does

not define or otherwise constrain the Secretary's independent judgment as to the meaning of "effective steps" or "bring . . . to justice." Similarly, Congress has empowered the Secretary to "establish, and periodically update," procedures regarding the collection and evaluation of "credible information" regarding foreign units that may have committed a gross violation of human rights. *Id.* § 2378d(d).

To get to the merits of any of Plaintiffs' APA claims, the Court would have to disregard or second-guess the Secretary's discretionary decisionmaking. This is so because providing foreign assistance to military units otherwise prohibited from receiving aid only violates the Leahy Law if the Secretary has not decided that the foreign government has taken "effective steps" to bring such unit members "to justice," or in the case of advance funding, failed to enter into an appropriate agreement with the recipient foreign government.

Also, while Plaintiffs allege that "in over four years, the IVLF has not identified a single ineligible Israeli unit, notwithstanding credible information of tens of thousands of GVHRs by Israeli [security forces]," Am. Compl. ¶ 36, that misses the statutory requirement. State is the relevant deciding body of whether the conduct at issue constituted a GVHR. And Plaintiffs acknowledge that State found there was credible information that five Israeli units did so. *Id.* ¶ 40. At that point, the relevant statutory question was whether "such country is taking effective steps to bring the responsible members of the security forces unit to justice," which again resides within the Secretary's discretion. 22 U.S.C. § 2378d(b). Yet the Amended Complaint pled the Secretary determined such remediation had occurred. Am. Compl. ¶¶ 41, 45. The question is not whether Plaintiffs or any other entity would have concluded differently on those questions, because Congress delegated the discretion to decide those issues to State alone.

31

Further, while Plaintiffs seek a declaration that State's substantive and procedural application of the Leahy Law is arbitrary and capricious, Am. Compl. at 39, they overlook "the limited role federal courts play in reviewing such administrative decisions" under APA review, under which they use a "'narrow' standard of review — which appropriately encourages courts to defer to the agency's expertise." *Conservation L. Found. v. Ross*, 374 F. Supp. 3d 77, 88 (D.D.C. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This is particularly true in cases, like this one, that involve national security and foreign affairs. *See, e.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) (stating in APA case that "our review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential"); *Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) (noting that, where a "regulation involves the conduct of foreign affairs, we owe the executive branch even more latitude than in the domestic context" and stating that the high degree of judicial deference to the decision to designate an entity as a foreign terrorist organization "is a necessary concomitant of the foreign affairs power").

In sum and substance, Congress directed the Secretary to decide what "credible information" and "effective steps to bring to justice" means in the context of the Leahy Law. In these circumstances, where the Act does not prescribe how the Secretary should exercise his discretion, the challenged conduct has been committed to agency discretion. Accordingly, the Court should dismiss Plaintiffs' APA claims for failure to state a claim.

### C. Plaintiffs Fail to Plausibly State Any APA Claims.

Plaintiffs do not plausibly allege any violation of the Leahy Law. Therefore, assuming *arguendo* the Court finds Plaintiffs have standing and that they challenge a discrete final agency action, Plaintiffs' Amended Complaint still should be dismissed.

While the Amended Complaint generally alleges various GVHRs by Israel, and that "every unit operating in the Occupied Palestinian Territory has reasonably likely committed GVHRs and should be ineligible for U.S. assistance under the Leahy Law," Am. Compl. ¶ 55, it fails to identify a single specific unit that Plaintiffs allege would imminently cause them to suffer prospective harm or that has caused the harms they allege already occurred.  Plaintiffs' generalized allegations that all of the Israeli military committed GVHRs is conclusory and unsupported by specific factual pleading.  "[M]ere conclusory statements" and "legal conclusion[s] couched as . . . factual allegation[s]" are "disentitle[d] . . . to [this] presumption of truth." *Iqbal*, 556 U.S. at 678, 681.

Moreover, the Amended Complaint does not plead any facts establishing that since Secretary Blinken found Israel had taken sufficient remediation steps on August 9, 2024, other specific Israeli units committed GVHRs that went unremediated.  Thus, while Plaintiffs identified five Israeli units alleged to have committed GVHRs, their allegation that the Secretary determined that Israel had remediated those issues for all units results in a situation where there are no factual allegations upon which to conclude that State violated the Leahy Law.  To the extent Plaintiffs rely on military units committing GVHRs before August 9, 2024, and where Plaintiffs do not identify any units beyond the five discussed above, then they have failed to plead facts that would establish a Leahy Law violation because the Secretary determined all five units had been remediated.  To the extent Plaintiffs intend to rely on certain units committing GVHRs after August 9, 2024, Plaintiffs failed to identify such units, what they did, or when they did it, which makes their claim that a Leahy Law violation occurred merely speculative.  Simply put, Plaintiffs fail to plead sufficient *facts* from which the Court could conclude that Plaintiffs plausibly stated an APA claim.

And as discussed above, the Amended Complaint appears to take issue with Israeli military conduct from at least 1997 through "last year." *See* Am. Compl. ¶¶ 53-70.  Most of the allegations

occurring during that time period are outside of the six-year statute of limitations in 28 U.S.C. 2401(a) applicable to APA claims, making claims related to such conduct time-barred.  To the extent that Plaintiffs intend to allege APA claims based on final agency actions occurring within the last six years, they have failed to plead what the specific final agency actions or decision are, when they were taken, and what the factual basis surrounding the decisions was.  Having failed to do so, Plaintiffs' allegations are so broad that they prohibit judicial review of any particular State Department assessment of a discrete military unit or its funding decision as a discrete final agency action.  Plaintiffs' conclusory and speculative claims should be dismissed.

*      *      *

As set forth above, Plaintiffs' APA claims should all be dismissed because (1) they are impermissible programmatic attacks to all of State's Leahy Law administration; (2) the claims all require the Court to review the decisions committed to the Secretary's discretion; and (3) Plaintiffs' failed to plead facts and instead rely on conclusory allegations which fail to plausibly establish any particular violation of the Leahy Law that would be reviewable under the APA.

## <u>CONCLUSION</u>

Because none of the Plaintiffs can establish Article III standing for their claims seeking prospective injunctive relief, the Court should dismiss this entire action for lack of jurisdiction. To the extent the Court finds any Plaintiff has standing, the Court should dismiss all of the APA claims for failure to state a claim, because the Amended Complaint presents impermissible programmatic challenges to discretionary decisions and fails to plead non-speculative facts that establish plausible APA claims.  The Court should dismiss this action.

[<em>Signature page follows.</em>]

Dated: July 28, 2025

Respectfully submitted,

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL,
*Civil Division*

ALEXANDER K. HAAS
*Branch Director*

STEPHEN M. ELLIOTT
*Assistant Branch Director*

*/s/ Garry D. Hartlieb*
GARRY D. HARTLIEB  (IL Bar No. 6322571)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-0568
Email: garry.hartlieb2@usdoj.gov

*Counsel for Defendant*