# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMAL GAZA, et al.,
Plaintiffs,
v. Case No.: 1:24-cv-3503-ACR
MARCO RUBIO, in his official capacity as
U.S. Secretary of State,
Defendant.

DECLARATION OF JOSH PAUL

## Background and Qualifications

- From 2012 to 2023, I served as the Director of the Office of Congressional and Public Affairs Office in the U.S. Department of State, Bureau of Political Military Affairs.

- As Director, I and my office were responsible for managing the relationship between the Executive Branch and Legislative Branch of the U.S. Government regarding United States security assistance and arms transfers to foreign nations. In this capacity, I was a mandatory approver for all notifications to Congress regarding security assistance and arms transfers

- As Director, and, in 2022 during a part-time detail as Special Advisor on Arms Transfers and Human Rights to the Bureau of Democracy, Human Rights, and Labor (DRL) I also sculpted United States policies and practices to advance human rights around the world. My work also supported global de-mining efforts; U.S. security negotiations with other countries; and supporting Ukraine's resistance to Russian aggression, and other areas of defense diplomacy.

- During my part-time detail as Special Advisor on Arms Transfers and Human Rights to DRL I participated officially as a member of the Israel Leahy Vetting Forum.

- The Bureau of Political-Military Affairs is responsible for the oversight and management of over $6.5 billion in U.S. security assistance annually, plus over $150 billion in arms transfer authorizations.

- The Bureau of Democracy, Human Rights, and Labor, is responsible for the advancement of human rights in U.S. diplomacy, including the implementation of the "Leahy vetting" for security assistance.

- I previously held roles for the Defense Department in both the Office of the Deputy Assistant Secretary of Defense for Middle East Policy (DASD/ME) and the Coalition Provision Authority-Iraq; in U.S. Embassy Baghdad.

- As a result of my professional experience, I have direct, first-hand knowledge related to the implementation of the Leahy Laws and other human rights policies, laws, and processes, regarding the provision of U.S. security assistance.

**Leahy Vetting Procedures for Israel**

- In general, U.S. law (22 USC 2378d, the "Leahy Law" for the State Department) requires that before security assistance can be provided to a foreign unit or person, that entity must be vetted for credible information of gross violations of human rights. In my experience, despite numerous reports meeting the legal requirement, no Israeli unit or person has ever been denied assistance under this legal requirement.

- Section 7035(b)(7) of the Fiscal Year 2020 State and Foreign Operations Appropriations Act created a new mechanism for the Leahy vetting for countries that receive assistance In a manner in which recipient units cannot be identified prior to the receipt of Leahy-applicable assistance (so-called "untraceable assistance"), implemented via a requirement that countries receiving U.S. security assistance sign an agreement with the U.S. agreeing that should the U.S. identify a unit that is ineligible under the Leahy Law, no assistance would be provided to that unit.

- I know and believe, based on direct conversations with the Congressional staff responsible for drafting the above provision, that it was written specifically with Israel in mind.

- The agreements referenced above were executed by the Assistant Secretary of State for Political-Military Affairs. Based on direct knowledge and involvement, I know that the Government of Israel lobbied the State Department to include unique language in that agreement stating that Israel "has a robust, independent and effective legal system, including its military justice system".

- Based on direct knowledge and involvement, I know that the U.S. Assistant Secretary of State who signed the agreement purposefully did so in a way that made it hard to read their name, due to discomfort with the text of the agreement due to Israel's requested text.

- Based on direct knowledge and involvement in the Israel Leahy Vetting Forum (ILVF) I know that the forum reached consensus on a number of incidents, that those incidents

involving Israeli security forces met the standard for credible information of gross violations of human rights .

- Based on direct knowledge and involvement in the ILVF, I know that the process followed by the ILVF was different from that followed by other mechanisms created pursuant to Public Law 116-94 Section 7035(b)(7), including in that it required consultation with the Government of Israel, and required approval from at least the Deputy Secretary of State for the Government of Israel to be informed of any units being made ineligible for U.S. Security Assistance. Because of the latter requirement, an Action Memorandum to the Deputy Secretary of State or Secretary of State were required; in turn, this required senior officials in the Bureau of Democracy, Human Rights, and Labor (DRL) and/or the Bureau of Political Military Affairs (PM) to sign off on such paperwork.

- Based on direct knowledge and involvement in the ILVF and conversations with senior officials within the State Department including at the Deputy Assistant Secretary level within DRL, and the Deputy Assistant Secretary, Principal Deputy Assistant Secretary, and Assistant Secretary levels within PM, I know that such officials acknowledged the consensus within the ILVF but refused to sign off on the required Action Memorandum.

- In sum, based on direct knowledge and involvement, I know and believe that the Leahy Law, as applied to Israel, including through the ILVF process, is applied (or not applied) in a manner that is unique, politicized, and, relative to all other applications of this law, both arbitrary and capricious.

I hereby declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true and correct.

Executed this __5th__ day of February 2026

_____
Josh Paul