**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMAL GAZA, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:24-cv-3503-ACR |
| | ) | |
| MARCO RUBIO, in his official capacity as U.S. Secretary of State, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................2

ARGUMENT......................................................................................................................3

I.     PLAINTIFFS CONTINUE TO LACK STANDING TO CHALLENGE ALLEGED LEAHY LAW VIOLATIONS...........................................................3

       A.    Past Injuries..................................................................................................4

       B.    Speculative Future Injuries............................................................................5

       C.    Ongoing Alleged Injuries..............................................................................6

       D.    Plaintiffs' Identification of Security Units Is Conclusory, Speculative And Unsupported By Actual Facts ........................................................................8

II.    PLAINTIFF'S APA CLAIMS REMAIN INSUFFICIENT..................................9

III.   PLAINTIFFS' PROPOSED RELIEF WOULD NOT REDRESS THEIR ALLEGED INJURIES AND, IN ANY EVENT, GOES BEYOND APPROPRIATE JUDICIAL LIMITS ....................................................................11

IV.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY....................................................................12

V.    THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF PLAINTIFF'S ALLEGED FACTS ................................................................................................18

CONCLUSION.................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Am. First Legal Found. v. Cardona,*
 630 F. Supp. 3d 170 (D.D.C. 2022)................................................................................13, 18

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon,*
 786 F. Supp. 3d 13 (D.D.C. June 3, 2025)...........................................................................10

*Ayash v. Gulf Air B.S.C.,*
 No. 1:24-cv-03434, 2025 WL 247062 (D.D.C. 2025),
 *appeal filed sub nom. Ayyash v. Am. Airlines Inc.*, No. 25-7123 (D.C. Cir. Aug. 27, 2025)....13

*Banner Health v. Burwell,*
 126 F. Supp. 3d 28 (D.D.C. 2015),
 *aff'd in part, rev'd in part sub nom. Banner Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017) 19

*Bastin v. Fed. Nat'l Mortg. Ass'n*,
 104 F.3d 1392 (D.C. Cir. 1997).............................................................................................17

*Bein v. Islamic Republic of Iran*,
 No. 21-CV-2160-JMC-MAU, 2026 WL 809794 (D.D.C. Mar. 24, 2026)...............................20

*Camp v. Pitts*,
 411 U.S. 138 (1973) .............................................................................................................19

*Campaign Legal Ctr. v. U.S. Dept. of Just.*,
 34 F.4th 14 (D.C. Cir. 2022) ................................................................................................15

*CIA v. Sims*,
 471 U.S. 159 (1985) .............................................................................................................14

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983).............................................................................................................3, 4

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ...................................................................................................4, 6, 7, 8

*Cnty. of L.A. v. Shalala*,
 192 F.3d 1004 (D.C. Cir. 1999).............................................................................................12

*Cnty. of San Miguel v. Kempthorne*,
 587 F. Supp. 2d 64 (D.D.C. 2008) ..................................................................................20, 22

*Ctr. for Bio. Diversity v. Bernhardt*,
   442 F. Supp. 3d 97 (D.D.C. 2020),
   *aff'd sub nom. Ctr. for Biological Diversity v. Haaland*, 849 Fed. Appx. 2 (D.C. Cir. 2021).....3

*Ctr. for Bio. Diversity v. U.S. Dep't of Interior*,
   563 F.3d 466 (D.C. Cir. 2009) ........................................................................................6

*Custer Cnty. Action Ass'n v. Garvey,*
   256 F.3d 1024 (10th Cir. 2001)......................................................................................19

*Dep't of Navy v. Egan*,
   484 U.S. 518 (1988) .................................................................................................. 14, 15

*Dist. Hosp. Partners, L.P. v. Sebelius*,
   971 F. Supp. 2d 15 (D.D.C. 2013) .................................................................................20

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
   529 F.3d 1087 (D.C. Cir. 2008),
   *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir.
   2021)...............................................................................................................................15

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) .......................................................................................................19

*Gerber Prods. Co. v. Perdue*,
   254 F. Supp. 3d 74 (D.D.C. 2017) .................................................................................17

*Holland v. Cardem Ins.*, Co.,
   No. 1:19-cv-02362, 2020 WL 9439381 (D.D.C. 2020) ..........................................13

*Indigenous People of Biafra v. Blinken*,
   639 F. Supp. 3d 79 (D.D.C. 2022) ............................................................................. 4, 11

*Individual Reference Servs. Grp., Inc. v. FTC,*
   145 F. Supp. 2d 6 (D.D.C. 2001),
   *aff'd sub nom. Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002) ..................20

*Islamic Am. Relief Agency v. Gonzales*,
   477 F.3d 728 (D.C. Cir. 2007) .......................................................................................12

*Mwani v. bin Laden*,
   417 F.3d 1 (D.C. Cir. 2005) ...........................................................................................17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).........................................................................................................5

iii

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ...........................................................................................................10

*Palisades Gen. Hosp., Inc. v. Leavitt*,
    426 F.3d 400 (D.C. Cir. 2005) ...........................................................................................12

*Palmieri v. United States*,
    896 F.3d 579 (D.C. Cir. 2018) ...........................................................................................15

*Phoenix Consulting, Inc. v. Republic of Angola*,
    216 F.3d 36 (D.C. Cir. 2000) .......................................................................................13, 15

*Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007)...........................................................................................11

*Reps. Comm. for Freedom of Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ...............................................................................................15

*Silver State Land, LLC v. Beaudreau*,
    59 F. Supp. 3d 158 (D.D.C. 2014) ......................................................................................19

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985)...............................................................................................................5

*Trump v. Comm. on Ways & Means, United States House of Representatives*,
    415 F. Supp. 3d 98 (D.D.C. 2019) ......................................................................................13

*United States v. Garland,*
    991 F.2d 328 (6th Cir. 1993)...............................................................................................22

*United States v. Richardson*,
    418 U.S. 166 (1974)...............................................................................................................5

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ...............................................................................................................5

**U.S. Constitution**

U.S. Const. art. II, § 2 ...............................................................................................................14

**Statutes**

5 U.S.C. § 701(a)(2)...................................................................................................................11

22 U.S.C. § 2378d(a)..................................................................................................................11

22 U.S.C. § 2378d(b) ................................................................................................................11

28 U.S.C. 2401(a) .....................................................................................................................11

**Rules**

Fed. R. Civ. P. 26(b)(1)........................................................................................................13, 16

Fed. R. Evid. 201(a) ..................................................................................................................19

Fed. R. Evid. 201(b)...................................................................................................................19

Fed. R. Evid. 201(b)(1) .........................................................................................................20, 22

Fed. R. Evid. 201(b)(2) .............................................................................................................22

**Executive Orders**

Classified National Security Information, Exec. Order No.13,526, 75 Fed. Reg. 707 (Dec.29,
    2009)........................................................................................................................................15

Imposing Sanctions on the International Criminal Court, Exec. Order No. 14203, 90 Fed. Reg.
    9369 (Feb. 6, 2025) .............................................................................................................21

**Other Sources**

21B Wright & Miller's Federal Practice & Procedure § 5104 (2d ed. 1990)..............................20

Declaration of Intervention of The Government of The U.S. Pursuant To Article 63 of The
    Statute of The International Court Of Justice (March 12, 2026), https://www.icj-
    cij.org/sites/default/files/case-related/192/192-20260312-int-02-00-en.pdf.....................21, 22

Dep't of State, Bureau of Democracy, Human Rights & Labor, About the Leahy Law Fact Sheet
    (Jan. 20, 2025), https://perma.cc/V4FD-ECHE...................................................................22

EU BAM Rafah, *Rafah Crossing Point reopens as EU border mission resumes operations* (March 19, 2026), https://perma.cc/3ZY4-X7PP........................................................6

Jeremy M. Sharp & Jim Zanotti, Cong. Rsch. Serv., RL47828, Israel and Hamas Conflict In Brief: Overview, U.S. Policy, and Options for Congress (2024), https://www.congress.gov/crs-product/R47828.......................................................................................................4

Kanishka Singh, US criticizes ICJ opinion on Israeli occupation of Palestinian territories (July 20, 2024), https://www.reuters.com/world/us-criticizes-icj-opinion-israeli-occupation-palestinian-territories-2024-07-20/ ......................................................................21

Press Release, Dep't of State, Off. of the Spokesperson, This Week's International Court of Justice Hearings (Jan. 10, 2024, https://perma.cc/3BFH-U97B .............................................21

United Nations, *UN Office for the Coordination of Humanitarian Affairs Humanitarian Situation Report – 23 April 2026*, https://perma.cc/Y9QU-32KM...........................................................7

U.S. Gov't Accountability Off., GAO-25-107077, Human Rights: State Can Improve Response to Allegations of Civilians Harmed by US Arms Transfers (2025), https://www.gao.gov/assets/gao-25-107077.pdf......................................................16

**INTRODUCTION**

Plaintiffs' Second Amended Complaint suffers from the same deficiencies as its prior complaint and should be dismissed.  Plaintiffs continue to lack standing to challenge alleged Leahy Law violations under the Administrative Procedure Act ("APA") because none of the alleged injuries suffice to establish fear of future injuries that is causally connected to the actions of the United States Government, the only Defendant in this case.  Plaintiffs' recitation of alleged past and present harms from non-parties fails to establish the concrete, particularized, and imminent threat of future harm from Defendant's actions that they must establish to demonstrate standing to maintain this action.

The Court need not reach the merits because the case should be dismissed for lack of standing.  Regardless, Plaintiff's APA claims remain insufficient because Plaintiffs fail to plead facts that plausibly establish APA claims, Plaintiffs do not challenge a discrete, final agency action; and Plaintiffs rely on matters committed to agency discretion by law.  Plaintiffs' programmatic attacks cannot be pursued under the APA.

Finally, jurisdictional discovery on Defendant is not appropriate.  Such discovery is not permitted in lawsuits brought under the APA absent unusual circumstances.  Beyond that, the discovery sought is either classified, or subject to governmental privileges and generally not relevant, overbroad, unduly burdensome or disproportionate to the needs of the case.  And Plaintiffs cannot show that the discovery they seek would cure the speculative nature of their standing argument.

Nor should the Court take judicial notice of facts requested by Plaintiffs as they impermissibly seek to admit "facts" from foreign forums not involving the immediate parties and that are subject to reasonable dispute.  Such facts do not meet the requirements of the Federal

1

Rules of Evidence.  Regardless, none of the facts are relevant to Plaintiffs' claims, as they do not address the alleged injuries of the Plaintiffs.  Similarly, the underlying source materials are disputed by the United States government and would doubtfully be used by Defendant in fulfilling Leahy Law obligations.

Therefore, the Court should deny Plaintiffs' request for jurisdictional discovery and to take judicial notice and should dismiss Plaintiffs' Second Amended Complaint.

## BACKGROUND

Plaintiffs filed their Complaint on December 17, 2024, *see generally* Compl., ECF No. 1; they amended the Complaint on March 31, 2025, Am. Compl., ECF No. 10.  After motion to dismiss briefing on the Amended Complaint, the Court held a hearing on November 25, 2026, in which the Court expressed serious doubts, among other things, about Plaintiffs' ability to establish standing to sue.  Tr. of Mots. Hr'g, 51:13-14, ECF No. 29 ("What you've alleged so far is too nebulous and too far-reaching and not concrete enough.").  Despite these concerns, the Court agreed to give Plaintiffs another opportunity to amend the complaint, which Defendants did on February 16, 2026.  2nd Am. Compl., ECF No. 30.  When setting a briefing schedule for a motion in response to the Second Amended Complaint, this Court ordered that "Defendant may, in his discretion, file an entirely new motion or a short form of motion incorporating his prior arguments and responding to Plaintiffs' new and changed allegations."  Order, ¶ 2, ECF No. 28.[1]

---

[1] The Court also ordered that Plaintiffs "amended complaint shall be accompanied by a redline comparison between the current and forthcoming amended versions of the complaint[.]" *Id.* ¶ 1. Despite repeated requests by Defendant, Plaintiffs never provided a redline comparison but instead provided a highlighted version that is difficult to parse. *See* ECF No. 32.

Pursuant to the Court's briefing schedule, and to avoid burdening the Court with duplicative briefing, Defendant hereby incorporates by reference the relevant portions of their prior combined memorandum of law, Def.'s Mem. in Supp. of His Mot. to Dismiss Pls.' Am. Compl., ECF No. 20-1 ("Mem."), and Def.'s Reply in Supp. of His Mot. to Dismiss Pls.' Am. Compl., ECF No. 23 ("Reply Mem."), in support of this new motion to dismiss Plaintiffs' Second Amended Complaint. As Plaintiffs' new complaint suffers from the same deficiencies as the prior complaint, Defendant primarily addresses here only new material raised in the Second Amended Complaint.

## **ARGUMENT**

### I. PLAINTIFFS CONTINUE TO LACK STANDING TO CHALLENGE ALLEGED LEAHY LAW VIOLATIONS

Plaintiffs add six new individual plaintiffs to the Second Amended complaint and provide additional details for the other Plaintiffs. 2nd Am. Compl. ¶¶ 5-44. But for the same reasons expressed in Defendants' original motion, Mem., none of these new allegations establish Plaintiffs' standing. Plaintiffs assert either (1) past injury, which remains insufficient to establish imminent harm under *City of Los Angeles v. Lyons*, 461 U.S. 95, 104-05 (1983), *see also Ctr. for Biological Diversity v. Bernhardt*, 442 F. Supp. 3d 97, 104 (D.D.C. 2020) ("'As a general rule,' where a plaintiff 'seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing.'" (citation omitted)), *aff'd sub nom. Ctr. for Biological Diversity v. Haaland*, 849 Fed. Appx. 2 (D.C. Cir. 2021); (2) speculative future injuries such as imminent loss of consortium or (3) injuries that cannot reasonably be traced to the Leahy Act Review Process or be redressed by this Court.

3

### A.    Past Injuries

Seven of the thirteen Plaintiffs claim only past injuries.  (Plaintiffs Amal Gaza, Gaza 2, Gaza 3, Bassim Tamimi, West Bank 1, Gaza 4, and Eid Bassam Issa Im Eid.).[2]  2nd Am. Compl. ¶¶ 5, 7, 8, 18, 20, 26, 41.  Some of these alleged injuries go back as far as 1993.  *Id.* ¶ 18.  Others involve claims of past property injury,  *id.* ¶ 5, or allegations of past displacement,  *id.* ¶ 7.  None credibly explain why such past activity will lead to future harm or how that harm will be remediated by Defendants' Leahy Law process.  *See* Reply Mem. at 5-7; *Lyons,* 461 U.S. at 104-05; *see also Indigenous People of Biafra v. Blinken* ("*Biafra*")*,* 639 F. Supp. 3d 79, 85 (D.D.C. 2022) (holding in case involving Leahy Law and foreign military funding challenge that allegations of past harm are insufficient "to establish future injury").

Further, many of the alleged injuries occurred months, if not years ago.  *See* 2nd Am. Compl. ¶ 5 (property injury in October 2023); *id.* ¶ 7 (displacement in September 2025); *id.* ¶ 8 (physical injury sometime in 2023 - no specific date mentioned); *id.* ¶ 18 (arrested and detained on October 29, 2003).  And Plaintiffs past injury claims took place in the context of an active war between Israel and Hamas that started on October 7, 2023, when Hamas invaded Israel, killing over a thousand individuals and kidnapping and taking hostage hundreds of others.  *See* Jeremy M. Sharp & Jim Zanotti, Cong. Rsch. Serv., RL47828, Israel and Hamas Conflict In Brief: Overview, U.S. Policy, and Options for Congress (2024), https://www.congress.gov/crs-product/R47828 (citing over 1200 deaths and the taking of over 250 hostages).  But a ceasefire in that war took effect in October 2025 and has remained in place since, thus significantly reducing the risk of future injury to Plaintiffs that might be heightened in a wartime situation.  Thus, even less basis exists now to argue that Plaintiffs face a "certainly impending" future injury.  *Clapper*

---

[2] Three of the new plaintiffs, and six total, are proceeding pseudonymously.

*v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted); *see also Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (observing that courts dismiss as unfit for judicial review cases based on "contingent future events that may not occur as anticipated, or indeed may not occur at all." (citation omitted)).

### B.    Speculative Future Injuries

Three of the twelve Plaintiffs claim as their primary injury a fear of "imminent loss of consortium." 2nd Am. Compl. ¶¶ 9, 11, 14. Such claims fail because they are derivative of other people's prospective future injuries. A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (citation omitted). Further, this Court has already questioned the validity of any loss of imminent consortium claim. Tr. of Pre-Mot. Conf. 12:25 – 13:4, ECF No. 17 ("Initial Hr'g Tr.") ("[A] loss of consortium claim can get you into court…An imminent fear of loss of consortium I've never heard of.").

Another Plaintiff, Shawn Jabarin, asserts no past or present injury, but claims fear of imminent death, injury or harm by an "extrajudicial killing by Israeli security force units" at checkpoints, in raids or in other operations "conducted by Israeli military forces[.]" 2nd Am. Compl. ¶ 15. But such a claim could, hypothetically, apply equally to any residents of the West Bank, where Mr. Jabarin lives, and is precisely the type of "generalized grievance" for which "the impact on Plaintiff is plainly undifferentiated and common to all members of the public[,]" which cannot establish a particularized injury. *United States v. Richardson*, 418 U.S. 166, 176-77 (1974) (citation omitted); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992) ("We have consistently held that a plaintiff raising only a generally available grievance about government—

claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

### C.    Ongoing Alleged Injuries

Only two out of thirteen plaintiffs plausibly assert ongoing injury.  2nd Am. Compl. ¶¶ 31-40.  But these claims suffer from traceability and redressability flaws, relying on a "chain" of speculation fatal to their claims.  *Clapper*, 568 U.S. at 410; *see also Ctr. for Bio. Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) ("The more attenuated or indirect the chain of causation between the government's conduct and the plaintiff's injury, the less likely the plaintiffs will be able to establish a causal link sufficient for standing.").  Pseudonymous Plaintiff Gaza 5 claims that she cannot leave Gaza to seek cancer treatment because of the Coordinator of Government Activities in the Territories ("COGAT") systematic denial of "medical evacuation permits" since the "closure of the Rafah crossing in May 2024[.]"  2nd Am. Compl. ¶ 31.  Gaza 5 further maintains that "COGAT's policy since May 2024 is to deny any Gaza Palestinian to leave."  *Id.* ¶ 33.  She also claims that Israel is maintaining a "blockade preventing medical supplies from entering the territory," thus preventing her from accessing any cancer treatment. *Id.* ¶ 30.  Yet, Gaza 5's other statements contradict these blanket claims.  She admits that over 600 cancer patients have been permitted to travel for treatment since May 2024, *id.* ¶ 31, and that chemotherapy drugs remain available in Gaza, albeit in limited quantities,  *id.* ¶ 32.

Further, the Complaint fails to acknowledge that the Rafah crossing has not been permanently closed since May 2024.  *See, e.g.* EU BAM Rafah, *Rafah Crossing Point reopens as EU border mission resumes operations* (March 19, 2026), https://perma.cc/3ZY4-X7PP (reporting that "the Rafah Point is open again in both directions.  On the first day of renewed

6

operations, 25 individuals exited Gaza to Egypt, including nine medical cases, while 25 people entered Gaza from Egypt."). Or that medical supplies continue to enter Gaza. *See* United Nations, *UN Office for the Coordination of Humanitarian Affairs ("OCHA") Humanitarian Situation Report – 23 April 2026*, https://perma.cc/Y9QU-32KM ("Between 14 and 20 April, according to UN 2720 Mechanism data retrieved at 19:00 on 23 April, approximately 17,400 pallets of UN and partners' aid were offloaded at the Kerem Shalom and Zikim crossings. Of these supplies, nearly 70 per cent consisted of food assistance, followed by shelter items (24 per cent), health supplies (3 per cent), nutrition supplies (2 per cent), and WASH supplies (1 per cent)."). Thus, Gaza 5 has not presented valid claims for relief.

All of this underscores the speculative nature of Gaza 5's allegations as it relates to Israeli security unit actions, let alone to any Defendant actions. Even if Gaza 5 could prove that COGAT is committing ongoing GVHRs by preventing her from leaving Gaza to obtain medical treatment, it does not follow that the State Department would then terminate assistance to COGAT or another Israeli security force. As the Complaint admits, the State Department already made a past finding against COGAT but continues to provide assistance based on COGAT's remediation efforts. 2nd Am. Compl. ¶ 34. And even if Defendant terminated funding or threatened to terminate funding, it does not necessarily follow that "Israeli security units would reasonably likely permit medical evacuations and humanitarian access," or that Gaza 5 would get permission to leave Gaza for treatment. *Id.* All these claims rest on a "speculative chain of possibilities." *Clapper*, 568 U.S. at 409-10.

Plaintiff Ubai Aboudi similarly claims ongoing injury. Mr. Aboudi alleges that he sought permission to travel outside of the West Bank twice in 2022 and once in 2023 but was denied by COGAT and informed that he was subject to a travel ban on security grounds. 2nd Am. Compl. ¶

35.  Despite no claim that Mr. Aboudi has attempted to travel since 2023, Mr. Aboudi alleges that his travel ban remains in place, and thus "reasonably fears continued denial of his right to liberty by Israeli security forces." *Id.* ¶ 39.

But as with Gaza 5 and the other Plaintiffs, Mr. Aboudi's claims rest on a "highly attenuated chain of possibilities[.]" *Clapper*, 568 U.S. at 410.  Mr. Aboudi has not petitioned to travel since 2023, so it remains mere speculation that Israel will deny any future travel request. And even if Defendant found credible allegations that COGAT committed GVHRs and sanctioned COGAT or generally "sanction[ed] Israeli security forces responsible for GVHRs," 2nd Am. Compl. ¶ 40, it does not follow that Mr. Aboudi would thus get permission to travel. Even if "Israeli security units would reasonably likely permit freedom of movement to avoid a loss of U.S. assistance under the Leahy Law," *id.*, itself a highly speculative and conclusory contention, that does not mean that Israel would not or could not make an individualized decision to restrict the travel of Mr. Aboudi or anyone else.

**D.    Plaintiffs' Identification of Security Units Is Conclusory, Speculative And Unsupported By Actual Facts**

Plaintiffs now claim to have identified specific Israeli military units responsible for their injuries.  *Id.* ¶¶ 45-58.  But as with Plaintiffs' injury claims, these allegations are conclusory, speculative and unsupported by actual facts.  None of the alleged unit identifications are based on Plaintiffs' personal knowledge.  Rather, Plaintiffs allege that information establishing the units responsible are based on "official Israeli Defense Forces statements, Israeli and international media reports, United Nations documentation, and human rights organization investigations[.]"  *Id.* ¶ 45.

But Plaintiffs have failed to provide any of these sources, let alone any materials attesting to the accuracy of the information contained in these sources.  Without even that, Plaintiffs'

claims remain wholly speculative and unsubstantiated.  *See id.* ¶¶ 45-58 (allegations lacking any citation to sources).

Further, even if Plaintiffs' could accurately pinpoint the specific military units responsible for Plaintiffs' alleged injuries, they fail to explain how so doing would cure their standing defects: (1) none of that information informs what such units, or the Israeli military generally, would do in the future (especially as the allegations almost all involve fear of future injury) or (2) how that information is causally connected to the actions of the United States government, the actual Defendant in this case.  Only future GVHRs committed by a foreign security force unit relate to the underlying procedural violations Plaintiffs allege State committed under the Leahy Law.  And the identification of Israeli military or security units tells us nothing about State's action or inaction in implementing Leahy Law requirements, which are the actual violations at issue in this case.  *See* 2nd Am. Compl. ¶¶ 169-180.

## II.    PLAINTIFF'S APA CLAIMS REMAIN INSUFFICIENT

Plaintiffs' allegations remain insufficient to plausibly allege APA claims.  This is because (1) Plaintiffs fail to plead non-speculative facts that plausibly establish APA claims; and (2) Plaintiffs allegations are not reviewable under the APA as they (a) do not challenge discrete, final agency action; and (b) rely on matters committed to agency discretion by law.  *See* Mem. at 22-34 and Reply Mem. at 19-21.  Defendants have taken no agency action, and certainly no final agency action, establishing a categorical "*de facto* Israel exemption."  2nd Am. Compl. ¶ 168; *id.* ¶ 167 (stating that "Plaintiffs challenge a categorical failure").  What Plaintiffs continue to attempt to challenge is the entirety of the State Department's policies, procedures, agreements, and congressional consultations concerning its implementation of the Leahy Law with respect to

Israel.  And this is further evident from the expansive jurisdictional discovery that Plaintiffs seek. *See infra* at Section IV.

But such an effort is a programmatic attack on an agency's operation in a particular sphere and is thus inappropriate for review under the APA.  *See Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, 786 F. Supp. 3d 13, 18 (D.D.C. June 3, 2025) (explaining the power to issue that sort of holistic change to agency operations belongs not to courts but to the offices of the Department or the halls of Congress, where programmatic improvements are normally made); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (noting that significant changes to agency operations must come from "the offices of the Department or the halls of Congress, where programmatic improvements are normally made"); Mem. at 22-29 (explaining the impermissibility of programmatic challenges under the APA, which instead considers discrete final agency action).

Further, as Plaintiffs acknowledge, a 2024 Leahy Law review found that five Israeli units did commit GVHRs and the Secretary of State determined that each had effectively remediated these violations.  2nd Am. Compl. ¶¶ 93-94.  Thus, Plaintiffs' claim that the Leahy Law has effectively not been enforced against Israeli units is belied by the facts.[3] *See, e.g. id.* ¶ 64.

---

[3] Plaintiffs' self-serving non-party declarations presuming to instruct the Court on the "congressional intent underlying the Leahy Law and the extra-statutory procedures the State Department applies to Israel" are irrelevant.  2nd Am. Compl. ¶ 64; *see also* Ex. 1, Decl. of Josh Paul, ECF No. 30-1 ("Paul Decl."); Ex. 2, Decl. of Timothy Rieser, ECF No. 30-2; Ex. 3, Decl. of Charles O. Blaha, ECF No. 30-3 ("Blaha Decl.").  Among other things, none of these declarants can speak to the Plaintiffs' standing or to the discretionary nature of the Leahy Law process that renders Plaintiffs' claims unreviewable.  Further, Mr. Paul and Mr. Blaha have not worked for the State Department for three years.  Paul Decl. at 2; Blaha Decl. at 2.  Mr. Rieser has never worked for the State Department nor been personally involved in the Leahy Law vetting process.  These materials tell us nothing about current Leahy vetting practices and are of little value to this case.

Regardless, decisions under the Leahy Law are based on the Secretary of State's discretion. The prohibition on assistance to a foreign unit applies only "if the Secretary of State has credible information that such unit has committed a gross violation of human rights." 22 U.S.C. § 2378d(a). And the Secretary may, based on his determination, find that any GVHRs were remediated. *Id.* § 2378d(b) (prohibition shall not apply "if the Secretary determines and reports to the appropriate congressional committees that the government of such country is taking effective steps to bring the responsible members of the security forces unit to justice"). Section 2378d(b) does not define or otherwise constrain the Secretary's independent judgment as to the meaning of "effective steps" or "bring . . . to justice." Thus, the Secretary, in his discretion, determines whether a unit is credibly implicated in GVHRs and determines whether such units have remediated those GVHRS. Such decisions are not reviewable under the APA. *See* 5 U.S.C. § 701(a)(2).[4]

## III.    PLAINTIFFS' PROPOSED RELIEF WOULD NOT REDRESS THEIR ALLEGED INJURIES AND, IN ANY EVENT, GOES BEYOND APPROPRIATE JUDICIAL LIMITS

Even if the Court could find APA violations here, Plaintiffs' proposed relief would not redress their alleged injuries, which are tied to the actions of a third-party country. *See, e.g., Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.,* 489 F.3d 1267, 1274 (D.C. Cir. 2007) (redressability requires more than "mere[] [] speculation as to what third parties will do in response to a favorable ruling" ). For instance, any declaration that Defendant is violating the Leahy Law does not bear on what actions Israel might take in the future relevant to the Plaintiffs.

---

[4] To the extent Plaintiffs continue to assert violations based on allegations that are outside of the six-year statute of limitations period applicable to APA claims, contained in 28 U.S.C. 2401(a), such claims are time-barred. For instance, Plaintiffs frequently reference actions going back as far as 1997. *See, e.g.,* 2nd Am. Compl. ¶¶ 77, 119, 129, 132, 133, 134.

11

*See* 2nd Amend. Compl., Prayer for Relief ¶¶ (i)-(iv).  Similarly, even if the Court could "compel Defendant[s] to obtain written assurances from the Government of Israel . . . that units on the list will not receive U.S. security assistance," *id.* ¶ (vi), the Court has no authority over the State of Israel and no ability to compel or restrain its actions, *see Biafra*, 639 F. Supp. 3d at 87 (noting, in case seeking return of military aircraft delivered to Nigeria, that foreign sovereigns are independent actors "over whom the Court exercises no authority").

Further, the APA does not provide district courts "jurisdiction to order specific relief." *Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005).  Thus, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *Cnty. of L.A. v. Shalala*, 192 F.3d 1004, 1011 (D.C. Cir. 1999).  And in matters involving national security and foreign policy, such as this one, the Court should take extra care not to unduly restrain the Executive.  *See, e.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) (stating in APA case that "our review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential").

## IV.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY

Plaintiffs' request for jurisdictional discovery remains improper for several reasons.  To start, Plaintiffs did not file a separate motion seeking such relief, and they did not confer with the undersigned counsel about this request, LCvR 7(m).  Regardless, Plaintiffs seek expansive discovery, including at least six categories of documents and potentially thousands of pages of records.  *See* 2nd Am. Compl. at 79-81.  Plaintiffs also propose that the Court hold an unnecessary evidentiary hearing.  *Id.* at 81.  The Court should reject these requests.

12

Discovery is ordinarily not permitted in lawsuits exclusively brought under the APA. *See* Initial Hr'g Tr. 5:24-6:1; *see also Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 178 (D.D.C. 2022) (holding in APA cases that "[d]iscovery or supplementation of the administrative record is therefore not permitted unless a party can demonstrate unusual circumstances justifying a departure from this general rule." (citation modified)).

And with all discovery, such a request must be relevant and proportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), and the Court must limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit[,]" *id.* Further, as all the documents sought involve foreign sovereigns, such discovery "should be carefully controlled and limited[.]" *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). In any event, "a plaintiff may not use jurisdictional discovery to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." *Trump v. Comm. on Ways & Means, United States House of Representatives*, 415 F. Supp. 3d 98, 112 (D.D.C. 2019) (citation modified).[5] This is what Plaintiffs are attempting here. Such discovery would not promote judicial efficiency and is otherwise unwarranted.

As an initial matter, some of the documents Plaintiffs seek are either classified or subject to governmental privileges and as such are not discoverable. Plaintiffs' requests are also

---

[5] Plaintiffs' claim that they are entitled to discovery based on the standards of *Holland v. Cardem Insurance*, Co., No. 1:19-cv-02362, 2020 WL 9439381 (D.D.C. 2020). *See* 2nd. Am. Compl. at 79. But that case, and the other case cited by Plaintiffs (*Ayash v. Gulf Air B.S.C.*, No. 1:24-cv-03434, 2025 WL 247062 (D.D.C. 2025), *appeal filed sub nom. Ayyash v. Am. Airlines Inc.*, No. 25-7123 (D.C. Cir. Aug. 27, 2025)), discusses the elements needed to obtain discovery for a challenge to personal jurisdiction. This matter involves not personal jurisdiction, but subject matter jurisdiction and specifically, whether Plaintiffs lack standing. Regardless, and as discussed in this section, the Court should deny Plaintiffs' request.

generally not relevant, overbroad, unduly burdensome or disproportionate to the needs of the case.

Plaintiffs seek *inter alia* (1) A September 2025 OIG Report (ISP-S-25-08) titled "Classified Review of the Department of State's Implementation of Leahy Non-Traceable Assistance Requirements" ("OIG Report"); (2) All Israel Leahy Vetting Forum charter documents, standard operating procedures, meeting minutes from January 2019 to present, inter-agency communications, cases referred to ILVF and disposition of each case; (3) Comparative Enforcement Data for Leahy Law vetting of various countries from 2017 to the present; (4) unit-specific assistance records (records identifying which Israeli security units received assistance and/or funding), including specific dollar amounts allocated to each unit and the weapons provided; 5) 617 civilian harm incident reports referenced in an April 2025 GAO Report (GAO-25-107077); and (6) Congressional Notification Records related to 22 U.S.C. § 2378(d).  2nd Am. Compl. ¶¶ 79-80.

The OIG report is classified and not discoverable by the Plaintiffs.  The Constitution vests in the President and Executive Branch the authority and discretion to determine who may be granted access to classified information.  *See Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (citing U.S. Const. art. II, § 2).  "[I]t is the responsibility of [the Executive], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether [to disclose sensitive information]." *CIA v. Sims*, 471 U.S. 159, 180 (1985).

And a private attorney is not entitled to gain access to classified information unless and until the Executive Branch has specifically concluded that he or she has a right to receive classified information—an exceedingly rare scenario.  *Egan*, 484 U.S. at 528 ("It should be obvious that no one has a 'right' to a security clearance. The grant of a clearance requires an

14

affirmative act of discretion on the part of the granting official."); *see also Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018) (citing *Egan*); Classified National Security Information, Exec. Order No. 13,526, § 6.1 (dd), 75 Fed. Reg. 707, 727 (Dec. 29, 2009) (a "[n]eed-to-know" determination is made within the executive branch to ensure that a prospective recipient requires access to specific classified information to perform or assist in a lawful and authorized governmental function).

Review and disclosure of the Leahy Vetting Forum materials, comparative enforcement data, and unit-specific assistance records requests are disproportionate to the needs of the case. Producing these records would require Defendants to gather potentially thousands of documents, almost all of which involve foreign sovereigns, when discovery "should be carefully controlled and limited[.]" *Phoenix Consulting, Inc.*, 216 F.3d at 40. Many, if not all, of these documents are subject to governmental privileges, such as the deliberative process privilege and attorney-client privilege and are thus protected from disclosure. *See, e.g. Campaign Legal Ctr. v. U.S. Dept. of Just.*, 34 F.4th 14, 19 (D.C. Cir. 2022) (noting that courts are bound to "protect[] 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated'" (quoting *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021)). And Plaintiffs offer no adequate basis to explain how this voluminous discovery is relevant to or would supplement their jurisdictional allegations, beyond their "good-faith belief." 2nd Am. Compl. ¶ 67. *See FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008) ("a request for jurisdictional discovery cannot be based on mere conjecture or speculation"), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021).

15

Plaintiffs also seek "617 civilian harm incident reports from Gaza" allegedly referenced in an April 2025 GAO Report.  2nd. Am. Compl. ¶ 80.  But the GAO report, which focuses on U.S. arms transfers broadly, and not specifically on Leahy vetting, acknowledges only that the State Department received 617 total civilian harm reports from August 2023 through December 2024, not 617 reports from Gaza.  U.S. Gov't Accountability Off., GAO-25-107077, Human Rights: State Can Improve Response to Allegations of Civilians Harmed by US Arms Transfers (2025), https://www.gao.gov/assets/gao-25-107077.pdf ("GAO Report") (*see* introductory "GAO Highlights").  This could include reports from any country receiving arms transfers from the United States.  The GAO report is silent as to harm reports from Gaza.  Thus, this request is overbroad, disproportionate to the needs of the case and not targeted at producing relevant information.  *Cf.* Fed. R. Civ. P. 26(b)(1).

Further, the GAO report describes a process separate and distinct from the Leahy process. The GAO report involves State and Department of Defense responses to civilian harm reports related to the transfer of U.S. defense articles to foreign countries.  The GAO report does not focus on Leahy vetting of foreign security force units or on State's review of GVHR allegations. The 617 civilian harm reports noted by the GAO were collected under State's Civilian Harm Incident Response Guidance ("CHIRG") developed in response to GAO's 2022 recommendation that State produce "guidance for investigating any indications that U.S. defense articles have been used in Yemen by Saudi Arabia or UAE."  GAO Report at 20 (internal quotations omitted).[6]

Finally, the Congressional Notification records sought by Plaintiffs are not jurisdictionally relevant because they do not include information about individual injuries.

---

[6] Under CHIRG, a civilian harm incident is limited to civilian deaths, injury to a substantial number of civilians or significant damage to civilian objects.  *Id.* at 20 n.36.

16

Further, as these records necessarily reflect the instances in which the Department determined that Israeli security forces had committed GVHRs, their production will not support Plaintiffs' argument that the Department has failed to appropriately apply the Leahy Law to Israel and thus are not relevant to this litigation.

All these requests should be denied.  Even if Plaintiffs obtained the most favorable information possible, it would not cure their standing defects.  *See Gerber Prods. Co. v. Perdue*, 254 F. Supp. 3d 74, 85 (D.D.C. 2017).  Plaintiffs do not adequately explain how any of the sought discovery would provide evidence of a particularized injury or would provide proof of prospective injuries.  *See, e.g.,* 2nd Am. Compl. ¶ 67 (expressing Plaintiffs' "good-faith belief" that discovery will reveal who caused injuries).  Thus, what Plaintiffs seek amounts "to nothing more than a fishing expedition."  *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997).

Further, Plaintiffs cannot demonstrate a causal connection between State's implementation of the Leahy Law and any future military activity that Israel may conduct and cannot cure the speculative nature of Plaintiffs' alleged injuries.  Because this is a legal deficiency, it cannot be resolved by any amount of information fact-finding, and jurisdictional discovery should be denied.  *See Gerber Prods. Co.*, 254 F. Supp. 3d at 85; *see also Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (affirming denial of jurisdictional discovery on Afghanistan where the court did "not see what facts additional discovery could produce that would affect our jurisdictional analysis" (citation omitted)).

Plaintiffs also request an evidentiary hearing to resolve alleged factual disputes regarding: "(i) the material contribution of U.S. military assistance to specific Israeli security units' capacity to commit gross violations of human rights; and (ii) the reasonable probability

17

that Leahy Law enforcement would reduce such capacity[.]" 2nd Am. Compl. at 81. No evidentiary hearing is warranted here. Again, as an APA matter, such discovery is not permitted absent unusual circumstances not evident here. *Am. First Legal Found*, 630 F. Supp. 3d at 178. Further, as to Plaintiffs first topic, Defendant does not contest that U.S. assistance to Israel is a "material contribution" to its military, 2nd Am. Compl. at 81, though would dispute the conclusory language that insinuates it is a material contribution to specific security units' capacity to commit GVHRs. The second topic is ambiguous, conclusory, and argumentative as articulated.

But even if predictions could be made on the impact withholding aid would have on Israel's military capabilities, how Israel may elect to carry out future operations in response to reduced funding remains entirely speculative. Regardless, Plaintiffs have already argued these topics in their Second Amended Complaint, and these allegations do not entitle them to an evidentiary fishing expedition. *See, e.g. id.* ¶¶ 120-125.

## V.     THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF PLAINTIFF'S ALLEGED FACTS

Plaintiffs' exhortations that the Court take judicial notice of facts contained in certain cited materials similarly fall flat. While Defendant acknowledges that the Court can take notice of the *existence* of these materials, the Court should not take notice of the "facts" (as contained therein). Plaintiffs seek judicial notice of (1) International Criminal Court (ICC) arrest warrants for the Israeli prime minister and former defense minister; (2) three International Court of Justice (ICJ) documents (two orders and an advisory opinion) involving Israel activity in Gaza and (3) two UN reports involving Israel and genocide allegations. *Id.* at 81-82.

Under Federal Rule of Evidence ("FRE") 201, the Court may take judicial notice of an adjudicative fact if it "is not subject to reasonable dispute because it is generally known within

18

the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(a), (b).  Neither requirement has been met by Plaintiffs.

As an initial matter, this case is brought under the APA; judicial review is generally limited to the administrative record absent "extremely limited" circumstances, i.e. the agency action is not adequately explained or the agency acted in bad faith.  *Custer Cnty. Action Ass'n v. Garvey,* 256 F.3d 1024, 1028 n.1 (10th Cir. 2001) (citation omitted).  Indeed, it is a "fundamental principle[]" of judicial review that a court reviewing an agency decision should not go outside of the administrative record.  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985).  Instead, "[t]he focal point for judicial review" of agency action is "the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Judicial notice does not provide a basis for considering evidence outside of an administrative record.  *See Banner Health v. Burwell,* 126 F. Supp. 3d 28, 61 (D.D.C. 2015) ("Insofar as Plaintiffs seek to base their challenge upon . . . extra-record materials, even those available to the public of which the Court could take judicial notice, the Court concludes that it is necessary to apply the standard for considering extra-record evidence."), *aff'd in part, rev'd in part sub nom. Banner Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017); *Silver State Land, LLC v. Beaudreau,* 59 F. Supp. 3d 158, 172 (D.D.C. 2014) ("Judicial notice is 'typically an inadequate mechanism' for a court to consider extra-record evidence in reviewing an agency action. Instead, a court should only consider an adjudicative fact subject to judicial notice that is not part of the administrative record if it qualifies for supplementation as extra-record evidence . . . ") (citation and emphasis omitted) (quoting *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32

19

n.14 (D.D.C. 2013))); *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 78-79 (D.D.C. 2008) (refusing to consider extra-record evidence through judicial notice).

But beyond what applies specifically in APA cases, Plaintiffs make no effort to demonstrate that its "facts" are amenable to judicial notice under FRE 201.  First, Plaintiffs seek to admit facts that do not involve the immediate parties. *See, e.g.* 2nd Am. Compl. ¶ 68 (seeking notice of facts about non-party Israel).  These are general facts, not adjudicative facts and thus inadmissible under FRE 201.  "[A]djudicative facts are the facts about the parties and their activities, businesses, and properties.  Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent[.]" *Individual Reference Servs. Grp., Inc. v. FTC,* 145 F. Supp. 2d 6, 44-45 (D.D.C. 2001), *aff'd sub nom. Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002).

Further, while Plaintiffs seek admission of facts from a variety of materials, they "neither identity what facts the Court should notice nor explain how those facts support their claims in this case." *Bein v. Islamic Republic of Iran*, No. 21-CV-2160-JMC-MAU, 2026 WL 809794, at *3 (D.D.C. Mar. 24, 2026).  "Judicial notice is taken of facts, not documents."  21B Wright & Miller's Federal Practice & Procedure § 5104 (2d ed. 1990) (April 2026 update).

Finally, Plaintiffs assert that none of its proposed facts are subject to reasonable dispute. 2nd Am. Compl. at 81.  This is false.  All the claimed materials are subject to dispute.  The United States government does not recognize the validity of the ICC's arrest warrants and in fact, has imposed economic sanctions, in limited circumstances, as a result of those warrants. *See* Imposing Sanctions on the International Criminal Court, Exec. Order No. 14203, 90 Fed. Reg. 9369, 9369 (Feb. 6, 2025) ("The ICC has, without a legitimate basis, asserted jurisdiction over and opened preliminary investigations concerning personnel of the United States and certain of

20

its allies, including Israel, and has further abused its power by issuing baseless arrest warrants targeting Israeli Prime Minister Benjamin Netanyahu and Former Minister of Defense Yoav Gallant.  The ICC has no jurisdiction over the United States or Israel, as neither country is party to the Rome Statute or a member of the ICC.").

Similarly, the United States has applied to intervene in the ongoing ICJ matter relating to the January 2024 Order, the March 2024 Order and the July 2024 Advisory Opinion.  *See* Declaration of Intervention of The Government of The United States of America Pursuant To Article 63 of The Statute of The International Court Of Justice (March 12, 2026), https://www.icj-cij.org/sites/default/files/case-related/192/192-20260312-int-02-00-en.pdf ("ICJ Declaration").  In so doing, the State Department's Legal Advisor, on behalf of the United States, affirmed "that the allegations of 'genocide' against Israel are false."  *Id.* at 5; s*ee also,* Press Release, Dep't of State, Off. of the Spokesperson, This Week's International Court of Justice Hearings (Jan. 10, 2024, https://perma.cc/3BFH-U97B (calling allegations underlying the ICJ matter "unfounded"); Kanishka Singh, US criticizes ICJ opinion on Israeli occupation of Palestinian territories (July 20, 2024), https://www.reuters.com/world/us-criticizes-icj-opinion-israeli-occupation-palestinian-territories-2024-07-20/ (quoting the State Department' s view that the July 19, 2024 ICJ Opinion's conclusions were "inconsistent with the established framework" for resolving the Israeli-Palestinian conflict).

For similar reasons, both the September 16, 2025 Report of the United Nations Independent International Commission of Inquiry (alleging that Israel is committing genocide) and the October 20, 2025 Report of the UN Special Rapporteur (calling Gaza genocide a collective crime) are reasonably disputed, as are their underlying conclusions.  *See* ICJ Declaration at 5 (claims of genocide against Israel are "false").

Given that the alleged material facts and determinations in these documents have been questioned if not rejected by the United States government, one cannot claim that such materials are not subject to reasonable dispute.  Nor can one argue that such disputed facts contained in foreign materials are **"generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1), (2); *see also United States v. Garland,* 991 F.2d 328, 332 (6th Cir. 1993) (finding that court could not take judicial notice of truth of the statements contained in a foreign court's judgment "because some of these facts may remain in dispute"); *Cnty. of San Miguel,* 587 F. Supp. 2d at 78 (holding that court could not take judicial notice of inspector general report when court knew "nothing about the investigative process which led to the report's conclusions," and could not "access the report's validity").

And all of this is apart from the fact of the questionable relevance of these materials, as (1) none of the materials address the alleged injuries of Plaintiffs and (2) it remains unlikely that Defendant would consider orders and reports whose underlying conclusions are disputed by the United States government in fulfilling Leahy Law obligations.  The State Department relies on information that it deems reliable, accurate and impartial when assessing relevant facts that might lead to a GVHR finding.  *See* Dep't of State, Bureau of Democracy, Human Rights & Labor, About the Leahy Law Fact Sheet (Jan. 20, 2025), https://perma.cc/V4FD-ECHE (listing factors for consideration when weighing credibility of sources).

Thus, for all the reasons discussed, the Court should not take judicial notice of the alleged facts sought by Plaintiffs.

22

## **CONCLUSION**

For the foregoing reasons, as well as those offered in Defendant's prior combined memorandum of law, the Court should dismiss this action.

Dated: May 12, 2026

Respectfully submitted,

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL,
*Civil Division*

ALEXANDER K. HAAS
*Branch Director*

STEPHEN M. ELLIOTT
*Assistant Branch Director*

*/s/ Joshua N. Schopf*
JOSHUA N. SCHOPF
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-6304
Email: joshua.n.schopf@usdoj.gov

*Counsel for Defendant*

23